**LOUISIANA HIGH SCHOOL ATHLETIC ASSOCIATION, Appellant,**

v.

**ST. AUGUSTINE HIGH SCHOOL et al., Appellees.**

**Melodysse F. DYSON, on behalf of her minor, Melodye Dyson, pupil at Coghill's School et al., Appellants,**

v.

**LOUISIANA HIGH SCHOOL ATHLETIC ASSOCIATION et al., Appellees.**

No. 25357.

United States Court of Appeals
Fifth Circuit.

May 8, 1968.

1. 274 F.Supp. 809 (D.S.C.1967).

Thomas McFerrin, Kenneth C. DeJean, Jack P. F. Gremillion, Atty. Gen. of La., Baton Rouge, La., for appellant.

John P. Nelson, Jr., Nelson, Ormond & Nelson, New Orleans, La., for appellees.

Before GODBOLD and SIMPSON, Circuit Judges, and McRAE, District Judge.

GODBOLD, Circuit Judge:

This is a class action brought by a private high school with an all-Negro student body and by Negro students attending public high schools, all in the State of Louisiana. The plaintiffs seek to enjoin the maintenance and operation of a racially segregated system of interscholastic high school athletics in Louisiana by the Louisiana High School Athletic Association (LHSAA) and the Louisiana State Board of Education. The crux of plaintiffs' claim is that the State of Louisiana pursues a policy and practice of maintaining and operating a racially segregated athletic system through the means of allowing LHSAA to regulate and direct interscholastic athletics for white[1] high schools and allowing the Louisiana Interscholastic Athletic and Literary Organization (LIALO) to do the same for Negro high schools.

St. Augustine is an accredited private high school in New Orleans, maintained by the Archdiocese of New Orleans and the Society of St. Joseph of the Sacred Heart, a Roman Catholic religious order. The individual plaintiffs are minor Negroes who attend public high schools with predominantly Negro student bodies, which are not members of LHSAA.

St. Augustine maintains a policy of admitting any qualified applicant regardless of race, but its student body consists of about 750 Negro males. When this case was heard in the district court there was not, and never had been, any white students at the school. It is a member of LIALO.

1. We use "Negro school" and "white school" as a means of identification according to the color of the predominant majority of students attending a particular school.

In August, 1964 St. Augustine applied for admission to LHSAA, which is an unincorporated association nominally of high school principals, actually of schools. It coordinates interscholastic athletics for approximately 400 Louisiana schools, 85 per cent of which are public schools and 15 per cent private. This Association has exclusive supervision of interscholastic activities between white public schools in Louisiana.

Until 1962 LHSAA had consisted of schools with all-white student bodies and faculties. The "white only" membership clause of the Constitution was deleted in 1962. When St. Augustine applied all the public school members were schools formerly white but now integrated by court orders. Negro students at LHSAA member schools may compete in interscholastic athletics.

When St. Augustine applied for membership in LHSAA no school except a non-academic trade school had applied for admission and been refused. The application, in accordance with past procedure of some 45 years, was scheduled to come before the 10-man executive committee of LHSAA at the annual meeting of the Association in January, 1965 for acceptance or rejection. It did not. Instead at that annual meeting the constitution was amended to require that an application must first be approved by two-thirds of the schools in the LHSAA district in which the applicant, if admitted, will compete, then by a two-thirds vote of the schools present at the annual meeting. During 1965 and pursuant to this new procedure St. Augustine secured the necessary two-thirds approval from the schools in its district.[2] Its application was submitted to the general membership at the January 1966 annual meeting and voted down 185 to 11. It is admitted that St. Augustine met all requirements for membership except the two-thirds vote of those present at the annual meeting. During 1965 other

schools secured the necessary approval in their respective districts under the new procedure. All except St. Augustine were by vote of the assembly admitted to membership at the January 1966 general meeting.

This class action then was filed by St. Augustine and individual Negro children on behalf of other Negro children and schools similarly situated in Louisiana. The district court correctly treated the action as on behalf of all high schools in Louisiana who are or properly may become applicants for membership in LHSAA regardless of what may be the racial composition of their student bodies. Fed.R.Civ.P. 23(a), (b) (2) and (c)(4); Order Amending Fed. R.Civ.P. (Feb. 28, 1966) 383 U.S. 1031, see, also, 39 F.R.D. 213; see St. Augustine High School v. Louisiana High School Athletic Ass'n, 270 F.Supp. 767, 774 & n.8 (E.D.La.1967). The district court ordered that St. Augustine be immediately admitted to membership. It enjoined LHSAA from refusing membership to any high school, whether attended by only Negro or only white students, or otherwise, which meets all of the express requirements for membership contained in the constitution of the Association, solely on the basis of an arbitrary vote of its membership or on the basis of any failure of the applicant to meet any standard or qualification not specifically and expressly established by the Association and set forth in the constitution, by-laws, or other acceptable document of the Association. Also the court enjoined LHSAA from engaging in any practice, procedure or activity the purpose of which is to discriminate against any high school of the state by reason of the race, creed or color of the students or faculty of such school.

The Association was not prohibited "from establishing specific proper, reasonable and objective qualifications for membership in addition to those pres-

2. Afterwards the schools within the district that had voted against St. Augustine's application were taken out of the district, leaving in the district only those that had favored St. Augustine's admission, these being solely Catholic schools.

ently contained in its Constitution, nor * * * from readjusting its membership pursuant to such additional standards and qualifications as it may from time to time establish, *provided* that such additional qualifications be reasonable, nondiscriminatory, and do not have as their object the facilitation of unjust discrimination, and provided that before any member be expelled pursuant to any such additional standard, that member be given a reasonable opportunity to conform thereto."

The Association appeals from the decree of the district court.[3] The plaintiffs cross-appeal, seeking a broader form of order. The major contentions of the Association in this court are that its activities are not state action but are private in nature, that no injury to the plaintiffs was shown and that there was insufficient evidence that St. Augustine was excluded on racial grounds. We affirm the district court.

I

There can be no substantial doubt that conduct of the affairs of LHSAA is state action in the constitutional sense. The evidence is more than adequate to support the conclusion of the district court that the Association amounts to an agency and instrumentality of the State of Louisiana. Membership of the Association is relevant—85 per cent of the members are state public schools. The public school principals, who nominally are members, are state officers, state paid and state supervised, and together are the heads of all the white public high schools in Louisiana that participate in interscholastic athletics.

Funds for support of the Association come partly from membership dues, largely from gate receipts from games between members, the great majority of which are held in state-owned and state-supplied facilities. The paid staff of LHSAA is covered in part by the Louisiana Teachers Retirement Act and staff members are legally defined as teachers.[4]

The Association exercises wide control over scheduling, participation in and conduct of athletic events. Its by-laws (Art. X, § 4) require principals be responsible to it alone in matters pertaining to interscholastic athletic activities. It prepares and enforces eligibility rules. It limits the number of football and basketball games a public school may play in one season (Art. VIII). Contracts for games must be made on official LHSAA forms (Art. X). Game officials must be selected from the official LHSAA list (Art. VII) and paid a fee fixed by the Association (Arts. XI & XII). Annually the Association sponsors a basketball tournament conducted in public facilities (See Art. XII, § 3). Participation in tournaments, post season games, and bowl games must receive Association approval (Art. V, § 5), and the financial report thereon must be submitted within 21 days (Art. V, § 6). It has the power to keep schools from competing against other schools.

The power of the Association reaches not only to the stadiums, the gymnasiums and the locker rooms but into the public classrooms, the public principals' offices and the public pocketbook. It exercises control over curricula—a coach must teach a designated minimum number of classes per week. Principals are required to submit certain reports to the Association. The Association has the power to investigate, discipline and punish member schools by fine and otherwise. If a public school principal does not comply with the mandate of the Association, or if a public school coach uses an athlete whose eligibility is questioned by the Association, or if the student body of a public school act improperly in connection with an athletic event, the school—a state agency—is subject to Association discipline.

3. No relief was granted against the Louisiana State Board of Education, hence it did not appeal.

4. La.Rev.Stat.Ann. tit. 17:571(23) (1963).

The state schools are deeply involved in fielding and promoting athletic teams with expenditure of tremendous time, energy and resources. The state (including in that term schools and school systems to varying extents at various places as arms of the state) provides and pays the coaches, pays some coaches overtime for their afterschool work, supplies athletic equipment, at times makes cash grants for athletic purposes, carries insurance on players and facilities, supplies transportation to teams. The state finances, equips, trains and fields the teams. The Association assists, advises and aids in the effort, establishes standards and supervises and coordinates what the fielded teams do.

The factual context is not of the state's declining to act in an area which is then taken over by a private instrumentality. The state has not withdrawn from supervision and coordination of interscholastic activities as the Association contends. Instead, as the district court pointed out, interscholastic athletics is a program in which the state is actively and intensively involved, and "for the state to devote so much time, energy, and other resources to interscholastic athletics and then to refer coordination of those activities to a separate body cannot obscure the real and pervasive involvement of the state in the total program." 270 F.Supp. at 773.

## II

■ The evidence amply supports the inference that St. Augustine was denied membership on racial grounds. No other reasonable inference is supported by the record and no other explanation is offered to us.

The plaintiffs submitted abundant evidence of specialized and particularized injury,[5] although exclusion from this function of the public education program of the State of Louisiana was itself sufficient. United States v. Jefferson County Bd. of Educ., 372 F.2d 836 (5th Cir. 1966), aff'd en banc, 380 F.2d 385 (5th Cir. 1967), cert. denied, East Baton Rouge Parish School Board v. Davis, 389 U.S. 840, 88 S.Ct. 72, 19 L.Ed.2d 103 (1967).

## III

■ We agree with the district court that the LHSAA may establish reasonable and definite (and non-discriminatory) standards for membership. But participation in this state program may not be denitd to ,oou(addoifasaueNYjr not be denied to applicants meeting those standards on the basis of adverse vote by those already fortunate enough to be participants. Thus we construe the word "arbitrary" as used by the district court in the phrase "arbitrary vote" to mean a vote to deny membership to an applicant which has met proper and reasonable membership requirements and standards as defined by the Association. If the applicant meets the standards no showing of hands can exclude it from becoming a part of this state activity.

## IV

■ The result is not changed either by St. Augustine's being a private school seeking admission to an association composed predominantly of public schools or by the existence of private schools as members of the Association. Having elected to allow private schools to par-

5. The National Federation of State High School Athletic Associations will recognize one association in each state—in Louisiana that is LHSAA. Member schools of LHSAA receive much broader coverage and publicity at the hands of the news media than do LIALO schools. The "Top Ten" teams of the LHSAA are widely publicized but not the "Top Ten" of the LIALO. All-star teams chosen by the Sports Writers' Association and the Coaches Association are limited to athletes who attend member schools. Athletes attending Negro schools are excluded from the annual All-Star football and basketball games sponsored by the Louisiana High School Coaches Association and the Annual LHSAA basketball tournament.

ticipate in this state activity Louisiana must extend the benefit consistent with constitutional standards. And those private schools which choose to participate in this state program, to the extent of their role as members and participants, become amenable to Fourteenth Amendment requirements. Evans v. Newton, 382 U.S. 296, 86 S.Ct. 486, 15 L.Ed.2d 373 (1966); Burton v. Wilmington Parking Authority, 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961).

## V

By cross-appeal the plaintiffs seek a broader order requiring immediate integration of LHSAA and LIALO, under the affirmative duty mandate of *Jefferson*. LIALO is not a party to this case. The request to integrate the two groups is in our view best addressed to the district court. The district court on the ground is more able than an appellate tribunal to deal with the administrative problems of orderly transition.[6]

The plaintiffs also attack by their cross-appeal the failure of the trial court to grant relief against the Louisiana State Board of Education. On the record before us we see no reason for disturbing the action of the trial court. The plaintiffs seek to expand the record on appeal by documents alleged to show actions taken by the Association since the trial below. Insofar as the documents may tend to show that the affairs of the Association are state action they are unnecessary. If plaintiffs claim that the documents tend to show that the State Board of Education is participating in affairs of the Association in ways other than existed at the time of trial below and therefore constitute new grounds for a claim of relief against the State Board, this is a matter to be presented first to the district court.

Affirmed.

6. See decree of the three-judge district court in Lee, et al, v. Macon County Bd. of Educ., et al, 283 F.Supp. 194 (M.D. Ala.) decided April 1, 1968, in which integration of the Negro and white high school athletic associations in Alabama was sought and the associations were ordered to file their own plans of an orderly procedure for accomplishing the result.