321 F.Supp. 1245 (1970)
Renee BLOUNT, Lee M. Blount, III, Kaye Blount, Melissa Blount, Minors, by their father and next friend, Lee M. Blount, Jr., and Lee M. Blount, Jr., and Mae Blount, Plaintiffs,
v.
LADUE SCHOOL DISTRICT, a Municipal Corporation, Ivan C. Nicholas, Superintendent of Schools, Ladue School District, and the Board of Education of the Ladue School District, and Robert Breeden, Principal, Conway School of the Ladue School District, Defendants.
No. 68 C 504(3).
United States District Court, E. D. Missouri, E. D.
October 9, 1970.
*1246 Forris D. Elliott, St. Louis, Mo., for plaintiffs.
Morton Lange, Robertson, Ely & Wieland, St. Louis, Mo., for defendants.

MEMORANDUM OPINION AND ORDER
REGAN, District Judge.
Dr. and Mrs. Lee M. Blount, Jr. and four of their five minor children[1] brought this action for injunctive and monetary relief to redress alleged deprivations of rights secured to them by the Equal Protection Clause of the Fourteenth Amendment. Defendants' motion for summary judgment was ordered taken with the case.
Plaintiffs are a Negro family who moved into the predominantly white City of Ladue in 1965. In the fall of that year, shortly after the fall semester had started, the two oldest Blount children, Renee and Lee III, were enrolled in the Conway Elementary School, Renee in the third grade and Lee in the first grade. In 1966, Kaye entered kindergarten in Conway and in the following year Melissa entered kindergarten.
Conway is one of 10 elementary schools operated by the Ladue School District, a political subdivision of the State of Missouri which is classified as a six-director district. The district also operates a high school and two junior high schools. Defendant Ivan Nicholas is the Superintendent of Schools of the defendant school district and has served in that capacity since 1942. Defendant Robert Bredin has been principal of Conway School since August 1965. The school had an average enrollment of some 400 children during the period involved in this action. The Blount children were the first (and to this time the only) black children to be enrolled at Conway, although there is evidence that black children have attended other schools in the district over the years *1247 since Brown,[2] about forty black children during the period here involved.[3]
The first amended complaint is in two counts. In the first count, allegations are made concerning alleged grievances of the four minor plaintiffs, and in the second count the interrelated alleged grievances of the parents are set forth. Basically, defendants are charged, while acting under color of state law, with permitting and allowing children of the school district to subject the minor plaintiffs to repetitive name-calling, insults, and acts of ostracism and with failing to diligently investigate and take corrective measures to abate the same. The conduct of defendants is alleged to have been done by them "concertedly, willfully, intentionally and maliciously and with the intent and purpose of harming the minor plaintiffs and to deprive them of their constitutional rights." Under the record in this case, we find these charges against defendants to be wholly unwarranted and unsupported by any credible evidence.
That there were some instances of racial name-calling (e. g. "nigger") by several children directed at the Blount children is not disputed by defendants. The exact number and frequency of such incidents is difficult if not impossible to determine, because very few of them were reported or became known to school authorities, and the testimony of the children relating to events occurring several years ago, for the most part uncorroborated and at times inconsistent, is unsatisfactory. So far as Renee is concerned, most of the name-calling incidents occurred shortly after she enrolled at Conway and while she was making what to her was a difficult adjustment to a new school and new surroundings. We find that after Renee left the third grade there were only a few isolated incidents in which a student called Renee a racial name. Of importance is the fact that none of the name-calling incidents occurred in the presence or hearing of any of her teachers. On those few occasions on which a teacher became aware of a name-calling incident, immediate corrective steps were taken to deal with the situation and to prevent, to the extent possible within the power of the school authorities, a recurrence.
Another matter to which Renee testified pertained to the reluctance of some of the boys in the third grade gym class to hold her hand while square dancing. We do not believe this conduct was racially motivated. In any event, the evidence demonstrates that the teacher took corrective action both as to the boys who hesitated to hold Renee's hand and as to other boys who were equally unwilling to hold the hands of white girls. A further complaint by Renee is that she was selected (by vote of her class) to play a mere servant-type role in a class play. The fact is that the part for which she was selected was one of the two lead parts in the play, and her present complaint in our judgment is an afterthought.
With respect to Lee, who entered school in the first grade, the evidence is that there were only two isolated instances of name-calling, both of which occurred on the playground, one while he was in the second grade and the other while he was in the third grade. Lee was also involved in several altercations on the playground but only one of these had any racial overtones. As to these incidents, prompt corrective action was taken by the teacher and the principal to prevent a recurrence.
As to Melissa, now in the second grade, there was no name-calling or other unpleasant racial incident. The fourth child, Kaye, was not called a racial name either in kindergarten or the first grade. While she was in the second grade there was one instance in *1248 which two children called her a racial name, but the name-callers were promptly taken to task by the teacher and principal, and thereafter no further name-calling occurred.
Numerous references to "ostracism" were made in the course of the protracted trial of this case, but there is no basis in the credible evidence for a finding of anything which could reasonably be considered as "ostracism," and it is clear to us that the staff of the school did everything within their power to prevent the possibility of such occurrences. It is obvious that no child can be expected (nor for that matter compelled) to be equally friendly with all other children. However, after Renee overcame her initial shyness she became more and more active and well-accepted by her classmates. Lee, too, was well accepted by his fellow students. In the fifth grade he was nominated for the office of class president, losing by one vote, and in the sixth grade he was elected to that office.
All four children gave the unmistakable appearance of being happy and well-adjusted school children. Although her parents withdrew Renee from Conway in October, 1968, on the premise that she was unhappy there, we find from the credible evidence that Renee would have preferred to remain at Conway, and that no action or inaction of any of the defendants either caused or justified her removal.[4] We also find that defendants Bredin and Nicholas felt strongly that it was to Renee's best interest to remain at Conway and that it was a mistake to withdraw her from the school.
The complaint further alleges that the educational and recreational opportunities and the school environment provided to the minor plaintiffs at Conway were not equal to those provided for the white children, thereby discriminating against the Blounts. A further allegation is to the effect that defendants willfully refused to "integrate" the faculty of Conway and to revise the curriculum to put greater emphasis on the contributions of negroes to the history and culture of America. We find that there was no violation of the rights of plaintiffs in any of the respects alleged. It is true that no blacks were on the Conway staff, but this resulted not from any failure on the part of any of the defendants to "integrate" the faculty but from the lack of available qualified black teachers. There is no authority supporting the proposition that a black student has the constitutional right to a black teacher. So, too, the fact that there were no black personnel at Conway (certainly absent evidence of an intentional refusal to employ qualified persons) may not be equated with discrimination against a black student. There was no evidence as to the actual content, much less as to any inadequacy, of the school curriculum, although we note that some books of the kind suggested by the Blounts and others were in the school library and some were on order.
The adult plaintiffs also complain about the failure or refusal of defendant Bredin to appoint Mrs. Blount as a room mother. As to this matter, the evidence is that the primary function of a room mother is to solicit votes for school bonds and tax elections. Mrs. Blount twice requested such appointment. The first time, in 1967, defendant Bredin denied the request for the valid reason that room mothers had already been appointed for that year. The following year no room mothers at all were appointed. The decision of whether to appoint a room mother as well as the determination of which mothers could best perform that function were matters solely within the discretion and judgment of the principal, and we find he acted reasonably and in good faith. There is nothing in the evidence which would remotely support a contention that the rights of the minor plaintiffs were in any way adversely affected by Bredin's decision. Even if it be assumed that *1249 Bredin's judgment was wrong, any such error gave rise to no constitutional claim. The fact is that Mrs. Blount served on the parents' library staff at Conway School doing work which brought her in contact with students, probably more so than a room mother. There is also evidence to the effect that in discussions with defendant Bredin, Dr. Blount volunteered to serve as an officer of the Parent-Teacher Association, but there was no authority on the part of Bredin to appoint such officers. No rights violation has been shown in this respect.
We have carefully considered the evidence as a whole relating to the feelings of defendant Bredin respecting plaintiffs and find a sincere desire on his part at all times to act in the best interests of the children, with no racial prejudices whatsoever. We also find that the relationship between the adult plaintiffs and the teachers of their children was one of mutual respect and friendship. At conferences and other meetings with the teachers of the children no dissatisfaction was ever expressed nor complaint made by the Blounts as to the education of their children at the school, the discussions primarily concerning the academic progress of the children.
We find from the evidence a complete absence of any discrimination whatsoever against the Blount children either in their admission to the Conway school or in providing them the education, environment, and recreational opportunities to which they were unquestionably entitled on a basis in all respects equal to that provided to all other children in the school district without racial discrimination. The facts here are wholly unlike McLaurin v. Oklahoma State Regents, 339 U.S. 637, 70 S.Ct. 851, 94 L.Ed. 1149. The evidence discloses that Conway School, both in practice and policy, is an outstanding example of what it sought to be achieved in the various desegregation cases, not a "white" school nor a "black" school, but just a school. Green v. County School Board of New Kent County, 391 U.S. 430, 442, 88 S.Ct. 1689, 20 L.Ed.2d 716.
The evidence is well-nigh conclusive that neither the defendants nor the teachers at Conway, either openly or covertly, condoned, encouraged or sanctioned any name-calling or any unfriendly act or statement directed to plaintiffs or any of them. The evidence is to the contrary. So far as appears from the evidence, the entire school administration, including the teachers, were sympathetically sensitive to the rights and feelings of the plaintiffs, and we could not help but sense the affection which the staff at Conway had for the Blount children as well as their desire to aid the children in whatever way possible.
We have found as a fact that plaintiffs have wholly failed to sustain their burden of proving their allegations that plaintiffs were denied rights guaranteed to them by the federal constitution.[5] And the broadbrush charges against defendants of concertedly, intentionally, and maliciously attempting to harm the minor plaintiffs are, as we have held, completely without foundation.[6]
The foregoing findings of themselves entitle defendants to judgment. We will, however, consider the individual responsibility of each defendant. First as to Bredin, the only defendant actually at Conway. We find from the evidence that Bredin acted reasonably in every instance in which he became aware of any name-calling or other incident involving the Blounts. In general, he relied *1250 upon the teacher to handle such matter at the classroom level and in other instances he took corrective steps which in the exercise of good faith discretion he deemed necessary, including talking to the children involved and their parents. There is no credible evidence that the matters could have been handled differently with different results, and in any event the good faith of defendant Bredin is evident.
Defendant Nicholas was not even aware of any name-calling incidents or any other complaint by the Blounts until shortly before this suit was filed and the evidence discloses no action by him of which plaintiffs may legally complain. And there is no basis for holding Nicholas on the theory of respondeat superior, even if it be assumed that a school employee violated rights of plaintiffs. Neither Bredin nor any of the teachers were "servants" of the superintendent. As was said in Smith v. Consolidated School District No. 2, Mo., 408 S.W.2d 50, 54, "It is a matter of public knowledge, and we may say of judicial notice, that all teachers in the public schools are employees of the school district and are employed by it on contracts. See §§ 163.080-163.100, RSMo 1959. The superintendent may presumably recommend, but he does not employ. He is neither the master nor the employer of any teacher."
The Board of Education of the Ladue School District, named as a defendant, is not a legal entity but merely the collective name of the six directors of the school district. The individual directors are not joined as parties. We find no basis upon which the Board as such may be joined as a party-defendant in this action (Cf. Handy Cafe, Inc. v. Justices of the Superior Court, 1 Cir., 248 F.2d 485, 487), wholly apart from the fact that there is not a scintilla of evidence that any of the directors had any knowledge of or participated in the slightest degree in any occurrences involved in this action.
The remaining defendant, the School District of the City of Ladue is not a "person" within the meaning of the Civil Rights Statute and is immune from liability for the damages sought by plaintiffs. See among other authorities Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492, and Clark v. State of Washington, 9 Cir., 366 F.2d 678. And we also note that the funds of the district are the property of the State of Missouri, not the private property of the district. School District of Mexico, Mo., No. 59 v. Maple Grove School District, Mo., 359 S.W.2d 743, 746.
The foregoing memorandum constitutes our findings of fact and conclusions of law. The Clerk is directed to enter judgment in favor of defendants and against plaintiffs.
NOTES
[1] The minor plaintiffs were brought into the case by the first amended complaint. The fifth child was not yet of school age.
[2] Brown v. Board of Education, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873; Brown v. Board of Education, 349 U.S. 294, 75 S.Ct. 753, 99 L.Ed. 1083.
[3] The present is not a class action, plaintiffs seeking relief only in their own behalf and only with respect to Conway School. No other blacks have complained about the operation of the Ladue schools.
[4] She is again a student in the Ladue School System, now attending a junior high school.
[5] To this date, long after the expiration of the ample time allowed him for that purpose, we have not had the benefit of a brief by plaintiffs' counsel setting forth his theory and supporting authorities as to the legal basis for this suit in the light of the evidence.
[6] Evidence was adduced to the effect that the minor plaintiffs suffered emotional damage as the result of the name-calling and other insults. We were not impressed with that testimony. However, in view of our finding on the issue of liability, we make no definitive ruling on the issue of damages.