**George D. REED, as father and next friend of Debbie Reed, et al., Plaintiffs,**

v.

**The NEBRASKA SCHOOL ACTIVITIES ASSOCIATION, a not-for-profit corporation, et al., Defendants.**

**No. CV72–L–145.**

United States District Court,
D. Nebraska.

April 12, 1972.

Wallace M. Rudolph, Lincoln, Neb., for plaintiffs.

Robert Guenzel, Lincoln, Neb., for defendants Chamberlin & Nebraska School Activities Ass'n.

Daniel D. Jewell, Norfolk, Neb., for all other defendants.

## MEMORANDUM RE MOTION FOR PRELIMINARY INJUNCTION

URBOM, Chief Judge.

This action challenges a state's practice of providing in a public school golf and basketball programs for boys, while providing none for girls and prohibiting girls from participating with or against boys.

For decision now is a motion for a preliminary injunction against the superintendent and principal of the school, members of the board of education, and the interschool activities association and its executive secretary to restrain them from preventing Debbie Reed from participating in the competitive golf program established at the Norfolk High School in Norfolk, Nebraska.

Jurisdiction of this court is established by 42 U.S.C. § 1983 and 28 U.S.C. § 1343.

The facts have been presented by stipulation. Debbie Reed is a student at Norfolk High School, which is operated by The School District of the city of Norfolk, in the county of Madison, in the State of Nebraska. Roger E. Maxwell is principal of the high school; Gene L. Lavender is superintendent of the Norfolk public schools; Leslie T. Chamberlin is executive secretary of The Nebraska School Activities Association; The Nebraska School Activities Association is a nonprofit corporation of which all school districts in Nebraska operating high schools are members; and the other defendants are the members of the board of education which controls the operation of the Norfolk public schools, including Norfolk High School.

Debbie Reed at an unspecified time asked Vernon Doren, guidance counsellor of the Norfolk High School, for permission to try out for the boys' golf team. After consultation with the athletic director, Gary Randels, Doren denied the request because it was contrary to the rules of The Nebraska School Activities Association.

The high school has a boys' golf team but does not have a girls' golf team. The boys' golf team competes with boys' golf teams from other school districts and has a schedule of meets and tournaments to be played with other school districts in the spring of 1972 under the

rules of The Nebraska School Activities Association. If there were a girl on the boys' golf team of Norfolk High School, the rules of the Association would bar the boys' team of Norfolk High School and the boys' teams of other districts that are members of The Nebraska School Activities Association from playing each other. The exact wording of the prohibitory rule, Article I–A, Section 16(d), of the bylaws of the Association relating to athletics, is:

"Girls and boys may not compete on the same athletic team, and girls and boys may not compete against each other."

## THE NEBRASKA SCHOOL ACTIVITIES ASSOCIATION AS A "PERSON" AND ACTING UNDER COLOR OF STATE LAW, CUSTOM OR USAGE WITHIN THE CIVIL RIGHTS ACT

■ A political subdivision is not a "person" within the meaning of the Civil Rights Act, 42 U.S.C. § 1983, when pecuniary damages are sought. Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed. 2d 492 (1961); Morey v. Independent School Dist. No. 492, 312 F.Supp. 1257 (U.S.D.C.Minn.1969) aff'd 429 F.2d 428 (C.A.8th Cir. 1970); Blount v. Ladue School Dist., 321 F.Supp. 1245 (U.S.D.C. E.D.Mo.1970); and Martin v. Davison, 322 F.Supp. 318 (U.S.D.C.W.D.Pa.1971). Nonetheless, federal courts have granted injunctive relief, which is all that is being sought here, against such a political subdivision. See Harkless v. Sweeny Independent School Dist., 427 F.2d 319 (C.A.5th Cir. 1970) cert. den. 400 U.S. 991, 91 S.Ct. 451, 27 L.Ed.2d 439 (1971); Butts v. Dallas Independent School Dist., 436 F.2d 728 (C.A. 5th Cir. 1971); and Henson v. City of St. Francis, 322 F.Supp. 1034 (U.S.D.C.E.D. Wis.1971).

■ Thus, whether The Nebraska School Activities Association is a political subdivision is not pivotal. Injunc-

tive relief is permissible in either case, if the Association acts under color of state law, custom or usage. Whether it acts under such color turns upon an analysis of the facts presented. See Louisiana High School Athletic Association v. St. Augustine High School, 396 F.2d 224 (C.A. 5th Cir. 1968); and Oklahoma High School Athletic Association v. Bray, 321 F.2d 269 (C.A. 10th Cir. 1963).

Introduced into evidence was the Thirty-seventh Annual Yearbook of The Nebraska School Activities Association, showing, among other things, the Association's constitution, bylaws, activities, auditor's report, and membership list. An exposition of the yearbook demonstrates that the Association is sufficiently entwined with the public schools to cause its actions to be under color of state law, custom or usage. Schools belonging number 378, of which the vast majority are public schools.

"The program of activities for the schools is recommended by the State Board of Education through the Commissioner of Education . . . but the rules . . . governing interscholastic competition . . . are made by the member schools . . . The Schools are the base of the entire organization and are represented by the . . . Superintendents, Principals and Activity Directors. These people attend the . . . District Activity Meetings held in conjunction with the Teachers Conventions in October. At these meetings they have an opportunity to . . . make recommendations for consideration by the Representative Assembly. Also at these meetings are elected . . . Delegates to the Representative Assembly . . ."[1]

The Representative Assembly has legislative authority which is "inclusive of all policy-determining power necessary or desirable for the effective regulation of school activities. Legislation may be enacted by a three-fifths majority vote

1. Thirty-seventh Annual Yearbook, p. 4.

at any annual meeting, provided changes in the Constitution . . . or in the eligibility rules for participation in interschool activities shall be approved by member schools of the Association. . . ." [2]

The superintendent of schools or another member of the school faculty is the authorized representative of a member school in all interschool events and no such event is to be held without his consent. [3]

Revenue is collected from the member schools directly through dues [4] and indirectly through gate receipts at various tournaments. [5]

Teaching duties of coaches, [6] eligibility of students, and reporting duties of superintendents or principals [7] are subjects over which the Association has some control. Any member school may be suspended from membership for as much as one year if found guilty of a violation of its obligations to the Association, [8] which would render the suspended school ineligible to compete with any other member. No member is permitted to engage in any event with a nonmember in Nebraska. [9]

■ The foregoing requires a conclusion that the activities of the Association are clearly under color of state law, custom or usage. See Louisiana High School Athletic Association v. St. Augustine High School, supra. All districts in Nebraska which operate high schools are members voluntarily. They have relegated to the Association extensive control over the interschool sports activities and are limited in their athletic programs by the rules of the Association. Financing and governing personnel are provided from the member schools, most of which are public schools. The Association, therefore, is subject to the Civil Rights Act.

## REQUIREMENTS FOR ISSUANCE OF A PRELIMINARY INJUNCTION

*Probability of Success on the Merits*

The Fourteenth Amendment of the Constitution of the United States provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." Actions by the defendants, including the Association, the members of the board of education, and the administrative staff of the school, are actions by the State of Nebraska. Is denial of an opportunity to try out for a place on a school golf team solely on the basis of sex a denial of equal protection of the laws? I think so, in the absence of justification by the state in the form of a rational connection between the differences in the sexes and a legitimate objective of the state in golf activities.

"Under traditional equal protection principles, a State retains broad discretion to classify as long as its classification has a reasonable basis." Graham v. Richardson, 403 U.S. 365, 371, 91 S.Ct. 1848, 1852, 29 L.Ed.2d 534 (1971)

■ A classification based upon sex requires the state to show that the difference in sex bears a rational relationship to a state objective sought to be advanced by the operation of the rule treating the sexes differently. See Reed v. Reed, 404 U.S. 71, 92 S.Ct. 251, 30 L. Ed.2d 225 (1971). I doubt that the ra-

---

2. Constitution of The Nebraska School Activities Association, Article V, Section 4.

3. Ibid., Article VIII, Section 1.

4. Ibid., Article III, Section 1; Audit Report.

5. Basketball tournament receipts alone in 1970–71 were $116,154.38. Thirty-seventh Annual Yearbook, Audit Report.

6. "No school belonging to this Association shall employ a coach . . . who is not teaching at least two classes daily or their equivalent . . ." Ibid., Bylaws, Athletics, Article I–A, Section 9.

7. Ibid., Bylaws, Athletics, Article I–A, Section 2.

8. Ibid., Constitution, Article VI, Section 1(4).

9. Ibid., Constitution, Article VIII, Section 2.

tional relationship may be presumed. See Stanley v. Illinois, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972). At the present stage of these proceedings I cannot say that there is or is not a rational relationship; I can and do say that none has been offered yet by the defendants.

■ One justification advanced by the defendants for the rule prohibiting girls from playing golf with and against boys is that golf, unlike education, is a privilege, rather than a right. Even assuming that interschool competition in golf is not educational, the privilege-right distinction is not viable. See Graham v. Richardson, supra. The issue is not whether Debbie Reed has a "right" to play golf; the issue is whether she can be treated differently from boys in an activity provided by the state. Her right is not the right to play golf. Her right is the right to be treated the same as boys unless there is a rational basis for her being treated differently. The burden on that issue rests upon the state—the defendants. Cases such as Morrison v. Roberts, 183 Okl. 359, 82 P.2d 1023 (1938), Tennessee Secondary School Athletic Association v. Cox, 221 Tenn. 164, 425 S.W.2d 597 (1968), and State ex rel. Evans v. Fry, 11 Ohio Misc. 231, 230 N.E.2d 363 (1967) miss the mark in these respects: they assume that schools and activities associations may make any rule they choose to make, irrespective of whether there be any rational connection with a reasonable objective of the state; and they indicate and they assume that students have only "privileges" relating to sports activities. These assumptions may be proper as matters of state law, with which those state courts primarily were dealing, but as matters of federal constitutional law they are untenable in view of the declarations of the Supreme Court of the United States cited in this memorandum. The case of Starkey v. Board of Education of Davis County School District, 14 Utah 2d 227, 381 P.2d 718 (1963) holds, reasonably perhaps, that under the evidence there is a rational connection between a disqualification of a married student from athletic participation and a proper school objective. I do not disagree with that principle, if evidence is offered to establish the connection or if the connection is so obvious as to require no evidence.

■ The defendants should have an opportunity to show justification for the discrimination based upon sex before a permanent injunction is issued, but on the strength of the evidence presently before the court I conclude that there is sufficient probability of success on the part of the plaintiff Debbie Reed to warrant the issuance of a temporary injunction.

*The Comparative Interests of the Parties*

■ Only by a process of drawing inferences can the interests of the parties in this case be described, because the evidence does not directly speak to the matter. Inferentially, Debbie Reed seeks the value of local and regional competition, an opportunity to enhance her reputation, and instruction afforded by the coaching staff. Even though the defendants argue that she is free to play golf even though she is not a member of the school's team, the values she seeks cannot be lightly set aside. The state affords interschool competition and instruction at some expense and effort, surely for the reason that it and the defendants think that the program is of benefit to the participants. If the program is valuable for boys, is it of no value for girls? The interests of the state and the defendants are harder to discover in the absence of direct evidence, but those suggested by counsel are the interest in enforcement of rules unfettered by student attacks and the financial savings by not having girls on the team or of not fielding a girls' team. On balance, the interests of Debbie Reed must be accorded the greater weight in the nature of things. The legitimacy of rules promulgated under color of state law is never immune from judicial review and the economic interest is not

large, apparently. Golf expense for the Association during 1971–72 was $891.84;[10] what it would be if a girl were on the team is not known, but a material increase is hard to envision. Similarly, a substantial increase in cost for the school is not suggested by any inference from the evidence.

### Irreparable Injury

■ The issue of irreparable nature of the injury requires the assessment of what each party stands to lose by the granting or denying of a preliminary injunction. For Debbie Reed, her benefits are fixed in time to the present golf season, and when it ends, so will its benefits to her. The loss, whatever its nature or dimensions, will be irretrievable. It is true that the defendants' interest in enforcement of the rules as to this one girl from now until a final hearing in this court will be similarly lost. As earlier pointed out, however, that interest is less weighty than those of Debbie Reed in the context of this case. Whatever slight financial expenditure by the defendants may be caused by a preliminary injunction will not be irretrievable, however, because a bond or other security may be required of the plaintiff to guard against financial hazard to the defendants.

■ Argument is made by the Nebraska School Activities Association that no justiciable controversy exists as between Debbie Reed and the Association and that, therefore, no irreparable harm has been shown. Two grounds are urged. First, the Association contends that there is a grievance procedure in Article VI, Section 1(3), of the constitution of the Association which has not been utilized by the plaintiff; second, it is argued that the plaintiff has not shown that the Association would enforce Article I–A, Section 16(d), of the bylaws to prevent her playing on the golf team or that sanctions would be visited upon any high school if she were allowed to play.

The constitution does not hint that the grievance procedure is available to an individual student. It provides only that the Board of Control shall "[a]djudicate all controversies between member schools which have appealed to it." The only member school here directly involved supports the rule, and Debbie Reed under the constitution has no standing to appeal to the Board of Control. Additionally, if the Board of Control under Article VI, Section 1(6) of the constitution has the power to set aside the ineligibility rule as to Debbie Reed, it cannot do so until September, 1972.[11] By then, the current golf season will have ended.

As to whether the Association would enforce the rule, it must be assumed that it would. The high school counsellor, when he told Debbie Reed, after consultation with the school's athletic director, why she could not try out for the golf team, obviously thought that the rule would be enforced. Both the school and the student were justified in supposing that the Association would abide by its own rules. See, generally, Columbia Broadcasting System, Inc. v. United States, 316 U.S. 407, 62 S.Ct. 1194, 86 L.Ed. 1563 (1942); and Abbott Laboratories v. Gardner, 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967).

Considering all, it is my opinion that a preliminary injunction should be is-

10. Ibid., Audit Report.

11. "The Board of Control shall exercise the following powers:

\* \* \* \* \*

(6) Except for the eligibility rule in regard to age, the Board of Control shall have authority to set aside the effect of any eligibility rule upon an individual student when in its opinion the rule fails to accomplish the purpose for which it was intended, or when the rule works an undue hardship upon the student.

"Requests for the consideration of such exceptions shall be acted upon by the Board of Control only twice during each school year. The first meeting for the consideration of such exceptions shall be held during the month of September, and the second meeting shall be held during the month of January."

sued upon the posting of security in the amount of $500.00 by or on behalf of the plaintiff Debbie Reed for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined.