443 F.Supp. 753 (1978)
YELLOW SPRINGS EXEMPTED VILLAGE SCHOOL DISTRICT BOARD OF EDUCATION et al., Plaintiffs,
v.
OHIO HIGH SCHOOL ATHLETIC ASSOCIATION et al., Defendants.
No. C-3-76-205.
United States District Court, S. D. Ohio, W. D.
January 9, 1978.
*754 Randal S. Bloch, Cincinnati, Ohio, Barbara Kaye Besser, Cleveland, Ohio, for plaintiffs.
Henry Maser and Carlisle Dollings, Columbus, Ohio (Ohio Athletic Ass'n), Roy F. Martin and Thomas F. Staub, Asst. Attys. Gen., Columbus, Ohio, for defendants.

ORDER
CARL B. RUBIN, District Judge.
This matter is before the Court on cross motions for summary judgment. By agreement counsel have submitted legal memoranda and stipulations in lieu of evidence and testimony.
In accordance with Rule 52 of the Federal Rules of Civil Procedure, the Court does submit herewith its Findings of Fact and Conclusions of Law.

I

FACTS
1. Three groups of litigants are involved in this action: The Ohio High School Athletic Association (Association); Robert Holland, Assistant Director of Health, Physical Education and Recreation, Ohio Department of Education, Franklin B. Walter, Superintendent of Public Instruction, Ohio Department of Education, and the Ohio Board of Education (State Defendants); and The Yellow Springs Exempted School District Board of Education (Board).
2. The Association is a nonprofit organization[1] which coordinates interscholastic athletic activity among secondary schools in Ohio.[2] It is composed of approximately 830 secondary schools, most of which are public,[3] and it is supported by gate receipts collected at sports tournaments that are held at public school facilities.[4] Membership is voluntary[5] and is available to any secondary school accredited by the Ohio Department of Education.[6]
3. The Association administers interscholastic athletic programs through its scheduling and rule-making functions. The rules which it promulgates are binding upon its members and may not be waived.[7] Members who disregard them are subject to suspension from the Association.[8] Such suspension, in effect, eliminates a school *755 from any interscholastic athletic competition since Association members are prohibited from competing against nonmembers.[9]
4. The State defendants are charged with establishing and implementing minimum standards for secondary schools in Ohio. The Ohio Board of Education exercises the "policy forming, planning and evaluative function for the public schools of the state."[10] Alternatively, the Ohio Department of Education is the administrative unit and organization through which the policies, directives, and powers of the state board of education . . . are administered."[11]
5. The State defendants do not exercise direct control over interscholastic athletic competition within Ohio. Although an Assistant Director of the Ohio Department of Education is an ex officio member of the Association's governing board,[12] he cannot vote.[13] The State defendants do not have a duty to enforce Association rules since athletics are not a minimum requirement for public schools.[14] Insofar as the Ohio Board of Education controls local school district policy through financial leverage,[15] the State defendants can indirectly control Association policy since the Association's governing board is composed of representatives from the six District Boards of Education.[16]
6. The Board operates a public school system in Yellow Springs, Ohio. It is given approximately 1.5 million dollars annually[17] to educate 950 students.[18] Although local taxes are a major source of income,[19] the State of Ohio contributes $375,000 per year to the Board,[20] while between $40,000 and $50,000 is received from the federal government.[21] Because the Board uses three-quarters of this latter sum to run general programs, including athletics,[22] the Board is subject to the requirements of Title IX of the Education Amendments of 1972.[23] Since some of the schools within its jurisdiction belong to the Association,[24] the Board is also sensitive to Association requirements.
7. The activity which forged this dispute occurred in 1974. Two female students, who were enrolled in a school within the Board's jurisdiction,[25] competed for and were awarded positions on the school's interscholastic basketball team.[26] Because of their sex, the Board excluded them from the team[27] and, instead, created a separate girls' basketball team on which they could participate.[28]
*756 By so doing, the Board complied with Association Rule 1, § 6,[29] which prohibits mixed gender interscholastic athletic competition in contact sports, such as basketball. A failure of such exclusion would place in jeopardy membership in the Association and would exclude the basketball team from interscholastic competition.[30]

OPINION
These questions require determination:
A. Are the State defendants proper parties?
B. Is State action present?
C. Have the State defendants and the Association violated the Fourteenth Amendment of the United States Constitution?
Although the Board also is claiming under Title 42, United States Code, Section 1983, that claim is subsumed under the Fourteenth Amendment claim.[31]

A. Proper Party Determination

The State defendants contend that they neither directly nor indirectly promote Association policy and therefore are not responsible for it. Interscholastic athletic policy allegedly is formulated by the Association alone. Although an Assistant Director of the State Department of Education is an ex officio member of the Association's governing board, he may not vote on policy matters. Moreover, the State defendants urge that they do not indirectly enforce Association policy. Since interscholastic athletics is not a minimum educational requirement of the State, membership in the only organization which provides for it allegedly is not compelled by State policy.
Before a State officer may be sued in an action to enjoin the enforcement of an allegedly unconstitutional regulation, the plaintiff must show that the officer either had a duty to enforce the challenged regulation, Ex parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908); Fitts v. McGhee, 172 U.S. 516, 19 S.Ct. 269, 43 L.Ed. 535 (1966); McCrimmon v. Daley, 418 F.2d 366 (7th Cir. 1969); Coon v. Tingle, 277 F.Supp. 304 (N.D.Ga.1967), or that he had a duty to prevent its enforcement by subordinates, Hague v. CIO, 307 U.S. 496, 59 S.Ct. 954, 83 L.Ed. 1423 (1939); Lewis v. Kugler, 446 F.2d 1343 (3rd Cir. 1971); Schnell v. City of Chicago, 407 F.2d 1084 (7th Cir. 1969); Lankford v. Gelston, 364 F.2d 197 (4th Cir. 1966); Boyd v. Gullett, 64 F.R.D. 169 (D.Md.1974); Wheeler v. Goodman, 298 F.Supp. 935 (D.N.C.1969).
If the State defendants were judged solely by the first standard, they would be improper parties. The Board has not established that the State defendants have enforced a technically non-governmental regulation, let alone that they are charged with its enforcement. Moreover, this is not a situation in which the State has relied upon a non-governmental entity to enforce State standards. The absence of minimum standards for athletics demonstrates that the State does not compel membership in the Association and compliance with its rules.
However, it is equally well-settled that a claim is stated against State supervisory personnel if they knew, or should have known, of allegedly unconstitutional action by their subordinates and encouraged it or took no steps to prevent it. Hague, supra; Lewis, supra; Schnell, supra; Lankford, supra; Boyd, supra; Wheeler, supra. "In either situation, if the . . . officials had *757 a duty . . . to prevent the officer under their direction from committing (the allegedly unconstitutional acts), they are proper defendants." Schnell, supra, at 1086.
This is the case here.[32] First of all, there is a supervisor/subordinate relationship between the State defendants and the Board. The State exercises limited control over local school districts by its financial support of school programs[33] and by its ability to revoke school charters for non-compliance with minimum educational requirements.[34] Moreover, it is clear that the State defendants knew their subordinates were implementing Association rules since an Assistant Director of the State Department of Education is an ex officio member of the Association's governing board. Finally, a duty to prevent the allegedly unconstitutional conduct of the local schools can be constructed. The school desegregation cases teach that state officers are obligated to eliminate an allegedly unconstitutional impediment if they substantially contributed to its creation. Bradley v. Milliken, 540 F.2d 229 (6th Cir. 1976). Accordingly, since Association revenue is contingent upon State consent to use public facilities to hold Association sponsored tournaments, the State defendants are proper parties to a lawsuit which alleges that they failed to end unconstitutional conduct of their subordinates.[35]

B. State Action

The determination of whether a State athletic association's conduct constitutes State action is factually based. Louisiana High School Athletic Ass'n. v. St. Augustine High School, 396 F.2d 224 (5th Cir. 1968). Of the many indicia of State action, four are especially probative: association dependence upon the State for operating revenue, Louisiana, supra; Reed v. Nebraska School Activities Ass'n., 341 F.Supp. 258 (D. Neb.1972); Oklahoma High School Athletic Ass'n. v. Bray, 321 F.2d 269 (10th Cir. 1963); involvement by school officials in the decision-making process of the association, Reed, supra; Brenden v. Independent School District 742, 342 F.Supp. 1224 (D.Minn.1972); predominance of public schools within association membership, Louisiana, supra; and association ability to impose sanctions upon State schools, i.e., State agencies, for non-compliance with association mandates, Louisiana, supra; Oklahoma, supra; Reed, supra.
Given these criteria, there can be no doubt that the Association has been acting as an instrumentality of the State. The Association's only source of revenue is the gate receipts from tournaments held at public school facilities. Thus the viability of the Association is very much a function of State policy. Association policy is determined by school officials and not by an independent board. Under Article 5 of the Association Constitution, Association decision-making functions are vested in six District Board representatives among others.[36] The Association is primarily an agent for public schools. Of its approximately 950 members, at least three quarters are public schools. Finally, the State acquiesces in Association sanctions against member public schools; that is, it permits a technically non-governmental entity to dictate terms to a State entity. In view of the foregoing, it is clear that the State of Ohio is intimately involved in the administration of interscholastic athletics and the Association's conduct constitutes State action in the Constitutional sense.

*758 C. The Due Process Clause

The Associations's exclusionary rule deprives school girls of liberty[37] without due process of law. Freedom of personal choice in matters of "education and acquisition of knowledge," Meyer v. Nebraska, 262 U.S. 390, 400, 43 S.Ct. 625, 67 L.Ed. 1042 (1923), is a liberty interest protected by the Due Process Clause of the Fourteenth Amendment.[38] By denying all girls the chance to compete against boys for positions on teams which participate in interscholastic contact sports, that right may be permanently foreclosed. The Due Process Clause permits such a deprivation only when it is predicated upon a sufficiently important governmental interest.
Two governmental objectives could be proffered to support the Association rule. First, the State arguably has an interest in preventing injury to public school children. Second, the State could contend that prohibiting girls from participating with boys in contact sports will maximize female athletic opportunities. Both are palpably legitimate goals. To achieve these goals, however, the State must assume without qualification that girls are uniformly physically inferior to boys. The exclusionary rule, as it relates to the objective of preventing injury, creates a conclusive presumption that girls are physically weaker than boys. The rule, as it relates to the objective of maximization of female opportunities, creates an equally conclusive presumption that girls are less proficient athletes than boys. However, these presumptions are in fact indistinguishable since both posit that girls are somehow athletically inferior to boys solely because of their gender.
A permanent presumption is unconstitutional in an area in which the presumption might be rebutted if individualized determinations were made. Cleveland Bd. of Edu. v. LaFleur, 414 U.S. 632, 94 S.Ct. 791, 39 L.Ed.2d 52 (1974); Vlandis v. Kline, 412 U.S. 441, 93 S.Ct. 2230, 37 L.Ed.2d 63 (1973); Stanley v. Illinois, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972). The athletic capabilities of females is such an area. Although some women are physically unfit to participate with boys in contact sports, it does not "necessarily and universally" follow that all women suffer similar disabilities. Vlandis, supra, at 452. Babe Didrikson could have made anybody's team. Accordingly, school girls who so desire, must be given the opportunity to demonstrate that the presumption created by the rule is invalid. They must be given the opportunity to compete with boys in interscholastic contact sports if they are physically qualified.[39]
The consequences of this determination carry beyond the State level. For the federal regulations also are unconstitutional insofar as they suggest that mixed gender competition, creation of separate teams for girls and boys in each sport, or creation of an all male team in contact sports are independent and wholly satisfactory methods of compliance. Separate teams may, in fact, be satisfactory if they ensure due process. However, their existence cannot serve as an excuse to deprive qualified girls positions on formerly all boy teams, regardless of the *759 sport. The Due Process Clause of the Fifth Amendment necessarily forbids that which its counterpart prohibits under the Fourteenth Amendment.
To the extent it authorizes recipients of federal aid to deny physically qualified girls the right to compete with boys in interscholastic contact sports, Subsection (b) of 45 CFR 86.41[40] is violative of the Fifth Amendment and must be held to be unconstitutional.
In view of the foregoing, the Court considers it unnecessary to rule upon questions raised under either the Supremacy Clause or the Equal Protection Clause.
The foregoing is intended to set forth the precedential underpinnings of this Court's ruling. It is addressed to those who will scrutinize the legal reasoning of this opinion. However, it is not only legal scholars, commentators and appellate courts who might have occasion to review this matter. There are many who may also be affected who are not trained in the law and who likewise seek an explanation. For them, the following has been added.
It has always been traditional that "boys play football and girls are cheerleaders." Why so? Where is it written that girls may not, if suitably qualified, play football?[41] There may be a multitude of reasons why a girl might elect not to do so. Reasons of stature or weight or reasons of temperament, motivation or interest. This is a matter of personal choice. But a prohibition without exception based upon sex is not. It is this that is both unfair and contrary to personal rights contemplated in the Fourteenth Amendment to the United States Constitution.
It may well be that there is a student today in an Ohio high school who lacks only the proper coaching and training to become the greatest quarterback in professional football history. Of course the odds are astronomical against her, but isn't she entitled to a fair chance to try?

CONCLUSIONS OF LAW
A. This Court has jurisdiction under 28 U.S.C. § 1343(3) and (4) and 28 U.S.C. § 1331(a).
B. State officials are proper parties to a suit alleging failure to end unconstitutional conduct of subordinates where such conduct was known to them and which they had a duty to prevent.
C. Conduct of defendant Ohio High School Athletic Association constitutes State action where constitutional violations are charged.
D. Association Rule 1 § 6, insofar as it prohibits mixed gender competition in interscholastic contact sports, deprives physically qualified girls of liberty without due process of law and perforce also violates 42 U.S.C. § 1983.
E. Subsection (b) of 42 C.F.R. § 86.41 deprives physically qualified girls of liberty without due process of law to the extent it authorizes recipients of federal aid to deny girls the right to compete with boys in interscholastic contact sports.
*760 F. The defendants' motions are hereby DENIED and the Board's motion is GRANTED insofar as it alleges violations of the Fourteenth Amendment by the Association, the Ohio Board of Education, and Robert Holland and the individual Association defendants, and is GRANTED insofar as it alleges violations of Section 1983 by the individual State defendants and the individual Association defendants. The defendants should be and are hereby permanently enjoined from continuing to enforce or to maintain Association Rule 1 § 6, or from enforcing, promulgating, or maintaining any rule, regulation, directive, custom or usage which bars physically qualified girls from participating with boys in interscholastic contact sports. The defendants should be and are further enjoined from disciplining, imposing sanctions, or otherwise penalizing the Morgan Middle School, any official thereof, its basketball team, any member thereof, or its coach because of participation on said team by females.
G. Award of costs and attorney fees will await submission of motion by plaintiff with appropriate supporting documents.
LET JUDGMENT ISSUE IN ACCORDANCE WITH THE FOREGOING.
NOTES
[1] Stipulation # 11
[2] Stipulation # 12
[3] Stipulation # 31
[4] Stipulations # 16 & 18
[5] Stipulation # 8
[6] Stipulation # 9
[7] Admission # 9
[8] Stipulation # 24
[9] Stipulations # 22-25
[10] ORC § 3301.07(A)
[11] ORC § 3301.13
[12] Stipulation # 2
[13] Stipulation # 5
[14] Stipulation # 6
[15] Stipulation # 41; ORC § 3301.16; ORC § 3301.07(C)
[16] Article 5  Association Constitution: "The management of the affairs of the Association shall be vested in a Board of Control, a Commissioner, an Associate Commissioner, and Assistant Commissioners, a Treasurer and six District Boards."
[17] Stipulation # 41
[18] Stipulation # 39
[19] Stipulation # 41
[20] Stipulation # 41
[21] Stipulation # 41
[22] Stipulation # 42
[23] 45 CFR § 86
[24] Admission # 5 and # 6
[25] Admission # 4 & # 6
[26] Stipulation # 44
[27] Stipulation # 46
[28] Stipulation # 47; Association Rule 1, § 9: "A high school girl may compete in the following: archery, badminton, basketball, bowling, cross country, fencing, field hockey, golf, gymnastics, softball, soccer, swimming, track and field, tennis and volleyball." Thus, separate basketball teams for each gender are permissible.
[29] Association Rule 1, § 6: "In all contact sports (Football, Wrestling, Ice Hockey and Basketball) team members shall be boys only."
[30] Admission 9; Stipulations # 22-25
[31] By its language, § 1983 encompasses violations of the Fourteenth Amendment.
[32] Although one court recently dismissed a similar action against a State superintendent of public education, it ignored the possibility of vicarious liability. Leffel v. Wisconsin Interscholastic Athletic Ass'n., 398 F.Supp. 748 (E.D. Wis.1975).
[33] Stipulation # 41; ORC § 3301.07(C)
[34] ORC § 3301.16
[35] The State defendants could discontinue subsidizing Association activity either by refusing to permit the Association to hold tournaments at public facilities or by establishing minimum athletic requirements and enforcing them under ORC § 3301.16. Cf. Roberts v. Way, 398 F.Supp. 856 (D. Vt.1975).
[36] See note 16, supra.
[37] Courts which have entertained the question have refused to discern a property interest in interscholastic athletic competition. It is not part of "a student's entitlement to a public education," as delineated in Goss v. Lopez, 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975); Albach v. Odle, 531 F.2d 983 (10th Cir. 1976). Moreover, injury from lost media exposure and lost opportunities for athletic scholarships are "too speculative to establish a property interest as defined in Board of Regents v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); Parish v. National Collegiate Athletic Ass'n., 506 F.2d 1028 (5th Cir. 1975). See also Mitchell v. Louisiana High School Athletic Ass'n., 430 F.2d 1155 (5th Cir. 1970).
[38] Although some circuits would find a liberty right in matters of personality expression, Richards v. Thurston, 424 F.2d 1281 (1st Cir. 1970), the Sixth Circuit has consistently refused to extend Constitutional protection to such matters. Jackson v. Dorrier, 424 F.2d 213 (6th Cir. 1970); Gfell v. Rickelman, 441 F.2d 444 (6th Cir. 1971).
[39] This question was expressly reserved by the Sixth Circuit in Cape v. Tennessee Secondary School Athletic Ass'n., 563 F.2d 793 (6th Cir. 1977).
[40] Title 45, Code of Federal Regulations, Part 86, Section 41 Subsection (b) provides that, despite the general admonition against sex discrimination in athletics announced in 45 CFR 86.41(a),

. . . a recipient may operate or sponsor separate teams for members of each sex where selection for such teams is based upon competitive skill or the activity involved is a contact sport. However, where a recipient operates or sponsors a team in a particular sport for members of one sex but operates or sponsors no such team for members of the other sex, and athletic opportunities for members of that sex have previously been limited, members of the excluded sex must be allowed to try out for the team offered unless the sport involved is a contact sport. For the purposes of this part, contact sports include boxing, wrestling, rugby, ice hockey, football, basketball and other sports the purpose of major activity of which involves bodily contact.
[41] Several years ago Ohio cartoonist Milton Caniff, in his strip "Steve Canyon," may have anticipated the future in a sequence where a young lady named Stalky Schwiesenberger ostensibly sent into a football game to kick a field goal passed instead into the end zone for the winning touchdown.