Torbin H. BRENDEN, individually and as parent and natural guardian of Peggy Brenden, et al., Plaintiffs,

v.

INDEPENDENT SCHOOL DISTRICT 742 et al., Defendants.

No. 4–72 Civ. 201.

United States District Court,
D. Minnesota,
Fourth Division.

May 1, 1972.

Thomas W. Wexler, Minneapolis, Minn., for plaintiffs.

Bernhard W. LaVander, Minneapolis, Minn., for defendant Minnesota State High School League.

Michael Donohue, St. Cloud, Minn., for Independent School District No. 742.

J. Dennis O'Brien, Minneapolis, Minn., for Independent School District 274.

## MEMORANDUM DECISION AND ORDER

### MILES W. LORD, District Judge.

The plaintiffs in this action seek preliminary and permanent injunctive relief based upon an alleged violation of their constitutional rights under the fourteenth amendment and 42 U.S.C. § 1983.

The facts giving rise to this cause of action are relatively simple. Two Minnesota high school girls, Peggy Brenden and Tony St. Pierre, desire to participate in certain sports offered at their respective high schools. Peggy Brenden, an eighteen-year old senior at St. Cloud Technical High School, St. Cloud, Minnesota, desires to become a member of the boys' tennis team at her school. Peggy is, by any standard, an excellent woman tennis player. She is currently ranked as the number one eighteen-year old woman tennis player in this area by the Northwestern Lawn Tennis Association. She has played in competitive tennis tournaments aside from any organized tennis activities offered by her high school. The only opportunity for her to play organized tennis at her high school consisted of an extramural tennis program for girls at St. Cloud Technical High School. This program consisted of approximately four one-hour practice sessions over a period of a month, during the fall of the year. The practice sessions were on Monday nights and there was, apparently, little participation or organized coaching. There were no organized matches. Aside from this extramural program, there is currently no other organized tennis program for girls at St. Cloud Technical High School. There is no interscholastic [1] tennis competition for girls at St. Cloud Technical High School. There is, however, interscholastic tennis competition for boys.

Tony St. Pierre, a seventeen-year old junior at Hopkins Eisenhower High School, Hopkins, Minnesota, desires to become a member of the boys' cross-country and cross-country skiing teams at her high school for the 1972–73 school year. Tony is also an excellent young athlete, whose interests lie in distance running and cross-country skiing. Like Peggy Brenden, Tony has participated in athletics outside of school sponsored athletics, primarily in events sponsored by the Amateur Athletic Union and the United States Ski Association. In participating in the AAU running events she has received coaching from the cross-country coach at Hopkins Eisenhower High School, who is a male. There are no girls' activities in either cross-country or cross-country skiing at Hopkins Eisenhower, although Tony was told that

---

1. To prevent confusion the terms intramural, extramural, and interscholastic should be defined. As provided in the League Handbook:

Extramural competition is a form of interschool competition that comes as a direct outgrowth of the intramural and/or Girls' Athletic and Recreation Association program. It is a plan of sports competition in which participants from two or more schools compete. It is a form of competition provided for those girls who would enjoy an occasional, sometimes spontaneously arranged, contest with girls from another school. The forms of extramural competition may include:

A. Sports Days: A team participates as a unit representing a school in one or more sports.

B. Telegraphic Meets: Results compared by wire or mail.

C. Play Days: Players participate in mixed groups not representing their own school.

The number of extramural participations by a school shall be limited to three (3) per intramural sport season.

2. Interscholastic Athletic Program

The Interscholastic Athletic Program is a program in which groups are coached and prepared to compete in a series of scheduled contests and/or tournaments with similar teams from other schools. This program could range from a minimum of four weeks with three weeks of conditioning and one week of competition to a maximum of twelve weeks as described in the rules . . .

League Handbook, Athletic Rules for Girls, pp. 88–89.

there would be a cross-country program for girls if she could find a sufficient number of girls interested in competing in cross-country running to justify the development of a girls' cross-country team. There was insufficient interest, apparently, to justify a separate girls' cross-country team. For the school year 1972–73, there are no projected plans for the development of either girls' cross-country or cross-country skiing teams. It is for the coming school year that Tony desires to compete as a member of the boys' cross-country and cross-country skiing teams.

Both girls have been informed by school authorities that they cannot participate on the boys' teams because of a rule of the Minnesota State High School League preventing participation by girls on boys' interscholastic athletic teams. That rule provides as follows:

> Girls shall be prohibited from participation in the boys' interscholastic athletic program either as a member of the boys' team or a member of the girls' team playing the boys' team.
>
> The girls' teams shall not accept male members.

Minnesota State High School League Official Handbook, 1971–72. Athletic Rules for Girls, Article III, Section 5 [hereinafter cited as League Handbook]. There is an equivalent regulation in their regulations governing boys' athletics. That rule provides that:

> Girls shall be prohibited from participation in the boys' interscholastic athletic program either as a member of the boys' team or a member of the girls' team playing the boys' team. The girls' teams shall not accept male members.

League Handbook, Athletic Rules for Boys, Article I, Section 8.

The Minnesota State High School League is a nonprofit corporation organized to promote certain stated educational purposes.[2] The League is a voluntary association claiming as its members all 485 public high schools in the state of Minnesota.[3] While there is no specific statutory authorization for the League, Minn.Stat.Ann. Section 129.-12 provides that the secondary schools of the state may become members of voluntary associations which have as their purpose the promotion of various educational objectives. The rules governing the member schools are promulgated by the League through certain procedures set forth in the Constitution of the League. League Handbook 34–49. Once promulgated, the actual enforcement of the rules becomes the responsibility of the member schools. The League retains the power, in absence of compliance with its rules, to impose

---

2. The purposes of the organization are stated as follows:

1. To provide, promote, extend, manage and administer a program of activities for youth of the public schools of the state on district, regional and state levels in the fields of athletics, speech, music and dramatics on a competitive basis, as well as such other curricular and extracurricular activities as may from time to time be sponsored by the public schools of Minnesota.

2. To establish uniform and equitable rules for youth in interschool activities.

3. To elevate standards of sportsmanship and to encourage the growth of responsible citizenship among the students, member schools and their personnel.

4. To protect youth, member schools and their personnel from exploitation by special interest groups.

5. To provide mutual benefit and relief plans for the assistance of public school students injured in athletic events or supervised school activities in meeting medical and hospital expenses incurred by reason of such injuries.

6. To serve the best interests of member schools and their students by providing a medium of cooperation and coordination in educational fields of endeavor and a series of related activities on a statewide basis, which they individually could not achieve or accomplish for their students and which aid and assist the schools in maintaining a constantly improved program.

League Handbook, Revised and Amended Articles of Incorporation, Article II.

3. League Handbook, Membership Roll, pp. 24–27.

upon the member schools certain administrative sanctions ranging from forfeiture of certain athletic contests to suspension from the League, depending upon the nature of the violation.

The basic allegations in the plaintiffs' complaint are directed toward a violation of certain civil rights allegedly due the plaintiffs. Basically, these allegations are that the plaintiffs have been denied due process of law and equal protection of the law in violation of the fourteenth amendment. The relief requested is declaratory and injunctive in nature. The plaintiffs seek to enjoin the defendants from enforcing Article I, Section 8 of the Athletic Rules for Boys or Article III, Section 5 of the Athletic Rules for Girls, or any related rules that would prevent participation of the plaintiffs in the interscholastic athletic events in which they desire to compete. The plaintiffs further request that the League rules mentioned be declared void and unenforceable as violative of the fourteenth amendment, in that the rules constitute an unlawful discrimination based on sex and that the rules violate the plaintiffs' constitutional rights guaranteed under the equal protection clause of the fourteenth amendment, in violation of 42 U.S.C. Section 1983. The complaint also requests a declaration that the substantial disparity of tax funds allocated to boys' athletic programs as opposed to girls' programs is a denial to the plaintiffs of equal educational opportunities in violation of the equal protection clause of the fourteenth amendment. The complaint further requests that Peggy Brenden be granted the right to compete for a position on the boys' interscholastic tennis team at St. Cloud Technical High School and that Tony St. Pierre be granted the right to compete on the boys' interscholastic cross-country and cross-country skiing teams at Hopkins Eisenhower High School. The complaint also requests money damages for the plaintiffs in the amount of $20,000.00. The plaintiffs have, however, during the course of the trial, voluntarily dismissed the prayer for money damages, rendering unnecessary a decision by this Court as to the propriety of such relief.

■ The Court has jurisdiction over this cause of action by reason of 42 U.S.C. Section 1983 and 28 U.S.C. Section 1343(3).[4] Under 42 U.S.C. Sec-

4. The Court notes that counsel have not raised the issue of whether a three-judge court should have been convened for the case at hand. Section 2281 of Title 28 U.S.C. provides that:

An interlocutory or permanent injunction restraining the enforcement, operation or execution of any State statute by restraining the action of any officer of such State in the enforcement or execution of such statute or of an order made by an administrative board or commission acting under State statutes, shall not be granted by any district court or judge thereof upon the ground of the unconstitutionality of such statute unless the application therefore is heard and determined by a district court of three judges under section 2284 of this title.

The Court is of the opinion that this was a case inappropriate for hearing and decision of a three-judge court for at least three reasons: First, the Court is not concerned with the question of whether the Minnesota State High School League rule is unconstitutional. The only con-

cern is with whether its application to two girls, Peggy Brenden and Tony St. Pierre, is unconstitutional. The Court makes no intimations as to the constitutionality or validity of the rule itself, either in general application or on its face. Second, the only state statute which contains authorization for the promulgation and enforcement of the rule is M.S.A. Section 129.12, subd. 1, which provides as follows:

Any school board may join or permit its schools to join any organization, association or league which has as its object the promotion of sport or the adoption of rules and regulations for the conduct of athletic, oratorical, musical, dramatic or other contests by or between school children provided that such organization, association or league provides in its constitution or by-laws that the commissioner of education or as his representative the supervisor of physical and health education shall be an ex-officio member of its governing body with the same rights and privileges as other members of its governing body.

tion 1983, any person who suffers the deprivation of civil rights guaranteed to him by the Constitution, by persons acting under color of state law may bring suit for the redress of those deprivations. It is clear that the State High School League and the defendant school districts are persons within the meaning of 42 U.S.C. Section 1983.[5] It is also clear to this Court that the defendants are acting under color of state law.[6] Although the Minnesota State High School League is a voluntary organization, the original allowance for public high schools to join such an association or organization is authorized pursuant to Minnesota law. Minn.Stat.Ann. Section 129.12 In addition, the rules governing League members are promulgated pursuant to a procedure which integrally involves the member school districts in the decision-making process. Beyond this, the ultimate enforcement of the rules becomes the responsibility of the member school and the public officials of those schools and school districts. In such a situation, where there is a tremendous public interest in educational functions, and where the public school machinery of the state is so involved in the effectuation and enforcement of rules which bind all public high schools in the state, the Court is left with no conclusion other than that defendant Minnesota State High School League and the defendant school districts are acting under color of state law.[7] Because the defendants are persons acting under color of state law, and because the defendants allege a deprivation of civil rights under the fourteenth amendment, the Court does have jurisdiction to determine the questions raised in this action on their merits.

■ A question has been raised by counsel for the Minnesota High School League and Independent School District No. 742 concerning the failure of the plaintiffs to exhaust administrative remedies, and that this should be a bar to a decision by this Court on the merits. In an action brought under 42 U.S.C.

The statute states only that school boards may authorize their schools to join such an organization, provided the organization has certain objects which it is attempting to further, including the adoption of regulations governing the conduct of athletics. The Court in this case has been concerned with a rule adopted by the Representative Assembly of the League which is binding upon all member schools. The regulation was adopted under permissive terms of the statute. The statute is not phrased in mandatory terms, requiring that certain rules or regulations must be adopted. It only states what the objectives of the organization which school boards allow their schools to join must be. Because of this, the thrust of the plaintiffs' complaint is not directed toward the unconstitutionality of the statute, but rather toward what the Minnesota State High School League and its members have done under a permissive statute. It would not appear that 28 U.S.C. Section 2281 is directed toward such questions. The question is not whether there is authority to adopt such rules, but whether the rules in their application to two girls are valid. See McWood Corp. v. State Corp. Comm'n, 237 F.Supp. 963, 964–965 (D.N. M.1965). Third, the question with which the Court is concerned is not with a rule of state-wide application, but only the application to two high schools, involving only two high school girls. This is not the type of rule having a state-wide effect necessary for the convening of a three-judge court. See Board of Regents of Univ. of Tex. Sys. v. New Left Educ. Project, 404 U.S. 541, 92 S.Ct. 652, 30 L.Ed.2d 697 (1972).

5. *See, e. g.,* Butts v. Dallas Indep. School Dist., 436 F.2d 728, 729 (5th Cir. 1971); Mitchell v. Louisiana High School Athletic Ass'n, 430 F.2d 1155 (5th Cir. 1970); Louisiana High School Athletic Ass'n v. St. Augustine High School, 396 F.2d 224 (5th Cir. 1968); Oklahoma High School Athletic Ass'n v. Bray, 321 F.2d 269 (10th Cir. 1963); Reed v. Nebraska School Activities Ass'n, 341 F.Supp. 258 (D.Neb.1972); Kelley v. Metropolitan County Bd. of Educ., 293 F.Supp. 485 (M.D.Tenn.1968), rev'd on other grounds, 436 F.2d 856 (6th Cir. 1970).

6. The "under color" of law provision in 42 U.S.C. Section 1983 is the same as state action under the fourteenth amendment. United States v. Price, 383 U.S. 787, 794, n. 7, 86 S.Ct. 1152, 16 L.Ed.2d 267 (1966).

7. *See* cases cited note 5, *supra.*

Section 1983 it is well established that the procedures for challenging state action under that provision is a remedy which is separate from and supplemental to any state administrative remedies.[8] In addition, counsel have failed to establish that there is any viable administrative remedy which the plaintiffs could have followed prior to the commencement of this action. There has been evidence to the effect that Peggy Brenden and Tony St. Pierre, and their parents, failed to in any way ask the appropriate school authorities to establish separate girls' interscholastic programs in the sports in which they desired to compete, prior to the commencement of this action. The evidence also illustrates, however, that school authorities were in some degree aware of the situations of the girls and that there was obviously no program equivalent to the boys' programs in tennis, cross-country, and cross-country skiing. In such a situation, where there is no prescribed administrative remedy it would be absurd to impose some nebulous exhaustion of remedies requirement which would necessitate the appeal by an aggrieved person to a general decision-making body, such as the school board or the representative assembly of the League, prior to allowing the institution of an action at law for the redress of grievances. There is also evidence to the effect that a high school athlete who is declared ineligible has the right, in the first instance, to appeal a decision holding him ineligible to the high school principal.[9] The principal may then hold a hearing in the matter. The principal's decision can then be appealed to the League, which will review the decision to determine whether the rule was cor-

rectly applied and whether there is substantial evidence of record to support the decision. Such a procedure would not, as applied to Peggy Brenden and Tony St. Pierre, have been fruitful. They would have appealed the decision that they were not to be allowed to compete on the boys' teams in tennis, cross-country, and cross-country skiing to the principal on the grounds that they should have been eligible to compete on those teams. In fact, a proposed amendment to League rules which might have allowed such competition was rejected by the League's representative assembly in March of 1972, indicating the fruitlessness of attempting such an appeal. Where the administrative remedies are plainly inadequate, or where resort to those procedures would be futile, there can be no requirement of exhaustion of remedies.[10]

An additional point which must be discussed concerns the arguments of counsel that, no matter what the decision of the Court, it will effect all public high school students in the state in similar situations and all school districts in the state. Counsel have argued that the binding effect will be, practically, to either uphold the League rule preventing mixed interscholastic competition or to render the rule void. A basic principle of constitutional adjudication is, however, that the courts will not formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied, and that constitutional issues should not be decided in absence of the necessity to do so, and then only on an adequate factual record.[11]

With these principles in mind, it should first be made emphatically clear

8. Wilwording v. Swenson, 404 U.S. 249, 251, 92 S.Ct. 407, 30 L.Ed.2d 418 (1971) ; McNeese v. Board of Educ., 373 U.S. 668, 674–675, 83 S.Ct. 1433, 10 L.Ed.2d 622 (1963) ; Stradley v. Andersen, 456 F.2d 1063 at 1064 (8th Cir. 1972) ; Sullivan v. Houston, Indep. School Dist., 307 F.Supp. 1328, 1337 (S.D.Tex.1969).

9. League Manual, Revised Constitution, Article VII, Section G.

10. Eisen v. Eastman, 421 F.2d 560, 569 (2d Cir. 1969), cert. denied, 400 U.S. 841, 91 S.Ct. 82, 27 L.Ed.2d 75 (1970).

11. See Rice v. Sioux City Memorial Park Cemetery, Inc., 349 U.S. 70, 74, 75 S.Ct. 614, 99 L.Ed. 897 (1955) ; Alabama State Federation of Labor, Local Union No. 103, United Brotherhood of Carpenters and Joiners of America v. McAdory, 325 U.S. 450, 461, 65 S.Ct. 1384, 89 L.Ed. 1725 (1945).

what this Court's ensuing decision does not turn upon. First, this Court does not decide whether participation in interscholastic athletics is of such importance as to be fundamental in nature.[12] There is an insufficient factual basis upon which to make such a decision. Second, this Court is not deciding whether sex, as a classifying fact, is suspect in the historical sense, sufficient to require the close judicial scrutiny invoked by the courts involved with classifications based on race, lineage, alienage, or wealth.[13] Such a decision is unnecessary to an adjudication of this action on its merits.

Third, this case does not involve a class action. It involves only the assertion of a violation of constitutional rights as to two high school girls, Peggy Brenden and Tony St. Pierre. There are no class action allegations in the complaint which could support a decision beyond the particular factual situation involved in this case. Fourth, this Court is not deciding whether the League rules providing that there shall be no participation by girls in boys' interscholastic athletic events is unconstitutional or constitutional. Given the narrow factual situation with which the Court is con-

12. In another context, education has been held to be a fundamental interest. Van Dusartz v. Hatfield, 334 F.Supp. 870 (D. Minn.1971); Serrano v. Priest, 5 Cal.3d 584, 96 Cal.Rptr. 601, 487 P.2d 1241 (1971). Neither of these cases were, however, concerned with the question of whether participation in interscholastic athletics is such an integral part of a public high school education so as to be in the nature of a "fundamental right." In light of the posture of this case as it developed at the hearing, a ruling on this question becomes unnecessary to this Court's decision.

13. Although it is unnecessary to the Court's decision in this case, the Court feels that the decision of the California Supreme Court in Sail'er Inn, Inc. v. Kirby, 5 Cal. 3d 1, 95 Cal.Rptr. 329, 485 P.2d 529 (1971), is strongly persuasive. In Sail'er the court analyzed the question as follows: Sex, like race and lineage, is an immutable trait, a status into which the class members are locked by the accident of birth. What differentiates sex from non-suspect statutes such as intelligence or physical disability, and aligns it with the recognized suspect classification is that the characteristic frequently bears no relation to ability to perform or contribute to society. . . . The result is that the whole class is relegated to an inferior legal status without regard to the capabilities or characteristics of its individual members. . . . Where the relation between characteristic and evil to be prevented is so tenuous, courts must look closely at classifications based on that characteristic lest outdated social stereotypes result in invidious laws or practices.

Another characteristic which underlies all suspect classifications is the stigma of inferiority and second class citi-

zenship associated with them. . . . Women, like Negroes, aliens, and the poor have historically labored under severe legal and social disabilities. Like black citizens, they were, for many years, denied the right to vote and, until recently, the right to serve on juries in many states. They are excluded from or discriminated against in employment and educational opportunities. Married women in particular have been treated as inferior persons in numerous laws relating to property and independent business ownership and the right to make contracts.

Laws which disable women from full participation in the political, business and economic arenas are often characterized as "protective" and beneficial. Those same laws applied to racial or ethnic minorities would readily be recognized as invidious and impermissible. The pedestal upon which women have been placed has all too often, upon closer inspection, been revealed as a cage. We conclude that the sexual classifications are properly treated as suspect, particularly when those classifications are made with respect to a fundamental interest such as employment. 95 Cal.Rptr. at 340–341, 485 P.2d at 540–541. For other discussions of the theory that sex is a "suspect" classification see Brown, Emerson, Falk and Freeman, The Equal Rights Amendment: A Constitutional Basis for Equal Rights for Women, 80 Yale L.J. 871, 881 (1971); Johnston and Knapp, Sex Discrimination by Law: A Study in Judicial Perspective, 46 N.Y.U.L.Rev. 675, 688–692 (1971); Note, Sex Discrimination and Equal Protection: Do We Need A Constitutional Amendment?, 84 Harv.L. Rev. 1499, 1506–1516 (1971). See also Stanley v. Illinois, 405 U.S. 645, 647, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972).

fronted, it is unnecessary and it would be inappropriate to make a determination as to whether the rule would be unconstitutional on its face or in all its applications.

What the Court is concerned with in this case is the application of League rules preventing participation of two female high school students in three sports at two high schools, involving only two school districts. In addition, the factual situation is further narrowed because of the high level of competitive skill which these girls have achieved in their respective sports.

An additional factor limiting the Court's decision is the absence of interscholastic competition in the relevant sports at the high schools attended by Peggy Brenden and Tony St. Pierre. It is upon this narrow factual situation that the Court is applying the League rules in question. As stated by the Supreme Court in Yick Wo v. Hopkins, 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220 (1886):

> In the present cases, we are not obliged to reason from the probable to the actual, and pass upon the validity of the ordinances complained of, as tried merely by the opportunities which their terms afford, of unequal and unjust discrimination in their administration; for the cases present the ordinances in actual operation, and the facts shown establish an administration directed so exclusively against a particular class of persons as to warrant and require the conclusion that, whatever may have been the intent of the ordinances as adopted, they are applied by the public authorities charged with their administration, and thus representing the state itself, with a mind so unequal and oppressive as to amount to a practical denial by the state of that equal protection of the laws which is secured to the petitioners . . . Though the law itself be fair on its face, and impartial in appliance, yet, if it is applied and administered by public authority with an evil eye and an unequal hand, so as practically to make unjust and illegal discrimination between persons in similar circumstances, material to their rights, the denial of equal justice is still within the prohibition of the constitution.

118 U.S. at 373–374, 6 S.Ct. at 1072.[14]

In determining whether the application of the rule to Peggy Brenden and Tony St. Pierre is a valid application, the Court is governed by the principles recently set forth by the Supreme Court in Reed v. Reed, 404 U.S. 71, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971). In *Reed* the Supreme Court stated that:

> A classification "must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike." Royster Guano Co. v. Virginia, 253 U.S. 412, 415, 40 S.Ct. 560, 64 L.Ed. 989 (1920).

404 U.S. at 76, 92 S.Ct. at 254. The question then considered by the Supreme Court was whether a difference in the sex of applicants for letters of administration to become estate administrators bore a rational relationship to a state objective that it was sought to advance under a statute authorizing different treatment of female administrators from male administrators. While the question in the instant case involves only the application of the League rules, the basic inquiry remains unchanged. The question is whether this application of the rules, which excluded the girls from competition on the basis of sex, constitutes a reasonable classification which is not arbitrary and which rests upon some ground of difference having a fair and substantial relation to the object of the rule in this particular fact situation.

It is incumbent upon the defendants to show the existence of a rational relationship between the objective sought to

---

14. See also United States v. Scotland Neck City Bd. of Educ., 442 F.2d 575, 577 (4th Cir. 1971), cert. granted, 404 U.S. 821, 92 S.Ct. 47, 30 L.Ed.2d 49.

be achieved by the rule and the classification utilized in reaching that objective.

The defendants have stated that the objective of the rule is to achieve equitable competition among classes, and that sex is a reasonable basis of classification to reach this objective. The objective of equitable competition, particularly as it relates to girls' interscholastic athletics, is advanced by the defendants as being of basic importance to the full development of viable girls' interscholastic athletic programs. In support of their objective of achieving equitable competition, the defendants argue that classification based upon sex is an integral part of achieving that goal. Thus, the defendants argue that sex is a reasonable basis for classification because of the physiological differences between males and females.

There are, of course, substantial physiological differences between males and females. As testified to by defendants' expert witnesses, men are taller than women, stronger than women by reason of a greater muscle mass; have larger hearts than women and a deeper breathing capacity, enabling them to utilize oxygen more efficiently than women, run faster, based upon the construction of the pelvic area, which, when women reach puberty, widens, causing the femur to bend outward, rendering the female incapable of running as efficiently as a male. These physiological differences may, on the average, prevent the great majority of women from competing on an equal level with the great majority of males. The differences may form a basis for defining class competition on the basis of sex, for the purpose of encouraging girls to compete in their own class and not in a class consisting of boys involved in interscholastic athletic competition.

It must be emphasized in this case, however, that these physiological differences, insofar as they render the great majority of females unable to compete as effectively as males, have little relevance to Tony St. Pierre and Peggy Brenden. Because of their level of achievement in competitive sports, Tony and Peggy have overcome these physiological disabilities. There has been no evidence that either Peggy Brenden or Tony St. Pierre, or any other girls, would be in any way damaged from competition in boys' interscholastic athletics, nor is there any credible evidence that the boys would be damaged.

The remainder of the arguments advanced by the defendants do not relate to the reasonableness of the classification in light of the objective sought to be achieved by the rule, but rather are directed primarily toward a plea to this Court to stay its hand because of a possible adverse impact on the development of equal girls' interscholastic athletic programs.[15]

The goal of developing separate competitive programs in interscholastic athletics for girls may be a desirable and feasible goal which should, perhaps, be given all possible aid. The Court is left with, therefore, an argument that this case should not be decided in favor of the plaintiffs because it will hamper the development of other girls' athletic programs in the future. There is a vague and undocumented fear on the part of the defendants that the goal of achieving equitable competition will perhaps be hampered.[16] Peggy Brenden and Tony

15. The evidence has established that there are no injuries peculiar to girls in athletic activities. The testimony to the effect that a coach would be required on an emergency basis to give first aid to such a minor injury as a young lady's charley-horse does not require further discussion. The rules provide that men may coach girls' teams after receiving 18 hours of special training and separate but equal facilities hold no promise of resolving that alleged dilemma.

16. Although the League may have as its broad political goal the achievement of separate but equal competitive facilities for boys and girls, such a political achievement cannot justify discrimination against these. plaintiffs. The law presumes that public officials will do their duty and thus they should not rely

St. Pierre should not be sacrificed upon this altar.

Closely related to this argument by the defendants is an argument that finding the League rule invalid as to these two girls would create the opportunity for all girls in the state to participate in all boys' interscholastic athletics, thus creating the possibility of repetitive challenges to the League rules preventing participation by girls in boys' interscholastic athletics. The argument thus seems to be that the League does not wish to be faced with the possibility of being forced to entertain challenges to what it feels to be a highly desirable rule. In spite of this factor, however, the possibility of a future challenge to any rule cannot provide a justification for disallowing an original challenge to a rule or the application of that rule. It seems obvious that allowing such a justification for the League's rule in this instance would, if carried into other areas, prevent contesting the validity of any statute or administrative regulation or rule on the grounds that such challenge might upset the regulative scheme which the statutes or rules are intended to promote. A rule cannot be pulled up by its own bootstraps in such a manner. And it is not the rule itself which the Court is here questioning, but only its application to the plaintiffs in this case.[17]

■ In summary, the Court is confronted with a situation where two high school girls wish to take part in certain interscholastic boys' athletics; where it is shown that the girls could compete effectively on those teams; and where there are no alternative competitive programs sponsored by their schools which would provide an equal opportunity for competition for these girls; and where the rule, in its application, becomes unreasonable in light of the objectives which the rule seeks to promote. Brought to its base, then, Peggy Brenden and Tony St. Pierre are being prevented from participating on the boys' interscholastic teams in tennis, cross-country, and cross-country skiing solely on the basis of the fact of sex and sex alone. The Court is thus of the opinion that in these factual circumstances, the application of the League rules to Peggy Brenden and Tony St. Pierre is arbitrary and unreasonable, in violation of the equal protection clause of the fourteenth amendment. For this reason, the application of the rule to these two girls cannot stand. The Court is therefore of the opinion that Peggy Brenden should be allowed to compete on the boys' interscholastic tennis team at St. Cloud Technical High School for the remainder of the current school year and that Tony St. Pierre be allowed to compete on the Hopkins Eisenhower interscholastic cross-country and cross-country skiing teams for the school year 1972–73. To implement this decision, it is ordered

1. That Peggy Brenden and Tony St. Pierre be declared eligible to compete on their respective teams at their respective high schools.

2. That the Minnesota State High School League is enjoined from imposing any sanctions upon either St. Cloud Technical High School or Hopkins Eisenhower High School for compliance with this Court order, and that no sanctions are to be imposed on any other public high schools for engaging in interscholastic competition with St. Cloud Technical High School and Hopkins Eisenhower High School.

The foregoing constitute this Court's findings of fact, and conclusions of law in accordance with Rule 52, Federal Rules of Civil Procedure.

---

on this Court for inspiration. If it is not their duty so to do, then in this context the Court should in no wise assert leverage upon them.

17. The League's forebodings of chaos are unjustified. Only 88 girls have indicated a desire to compete with boys.
The League rules have been relaxed for cities of the first-class where girls are now allowed to compete with boys. It would seem to matter little to these plaintiffs whether they live in a city of first-class or another city.
League Manual, Athletic Rules for Boys, Article I, Section 14; Athletic Rules for Girls, Article I, Section 13.