Pamela MAGILL, a minor, by her parents and natural guardians, William L. Magill and Patricia Magill, Plaintiffs,

v.

AVONWORTH BASEBALL CONFERENCE et al., Defendants.

Civ. A. No. 73–513.

United States District Court, W. D. Pennsylvania.

Aug. 16, 1973.

Stanley M. Stein, Pittsburgh, Pa., for plaintiffs.

William S. Webber, Fred C. Houston, Jr., Michael J. Boyle, Thomas F. Nelson, Edwin R. McMillin, II, Pittsburgh, Pa., for defendants.

## MEMORANDUM and ORDER

McCUNE, District Judge.

This is a suit seeking injunctive relief brought for Pamela Magill, by her parents and natural guardians, alleging that the defendant Avonworth Baseball Con-

1. At the hearing two defendants were dropped by stipulation of counsel: the Avonworth Board of Education and its individual directors and Ohio Township and its supervisors. All of plaintiffs' claims for money damages were also dropped.

"ACORD Authority" and "Avonworth Authority" were improperly identified in the pleadings. ACORD (Avonworth Community Organization for Recreation Development) is not an Authority under Pennsylvania law.

ference (ABC) has unconstitutionally discriminated against her on the basis of her sex by refusing to permit her to play little league baseball.[1]

The suit alleges violations of 42 U.S. C. §§ 1983 and 1985. Jurisdiction is predicated on 28 U.S.C. §§ 1343, 2201, and 2202:

On July 5, 1973, we held a consolidated hearing to consider motions for both preliminary and permanent injunctions. At the close of the testimony and arguments we refused to issue the injunctions and ordered the complaint dismissed. This written opinion will serve to amplify our oral opinion given from the bench. We stated from the bench that there were two problems involved, first, whether the action taken by the baseball conference was taken under color of state action and second, whether or not there had been unconstitutional discrimination. We will deal with the problems in that order.

On April 6, 1973, Mr. and Mrs. William Magill took their 10 year old daughter Pamela, allegedly a good baseball player, to a meeting in a Ben Avon Heights school to enroll her in the 1973 summer baseball programs of the ABC. The Magills completed an application and paid the $7.00 registration fee.

The following day an official of the baseball conference contacted William Magill and told him that Pamela would not be eligible to participate because the program was limited to boys. At Magill's request the matter was discussed at a meeting of the ABC Board of Directors and the directors unanimously voted to continue to limit the program to participation by boys only. The reg-

It is a non-profit, unincorporated volunteer organization which maintains the Avonworth Community Park. The park contains a baseball field, swimming pool, dance hall and picnic areas and is operated on a fee basis. Avonworth Municipal Authority floated a bond issue to purchase the park which it now owns and ACORD manages the field and charges fees to organizations which use the park.

istration fee was subsequently returned to the Magills and this suit was instituted.

. The ABC is a non-profit corporation chartered and organized under the non-profit corporation law of the Commonwealth of Pennsylvania. It administers an organized baseball program in an area which encompasses the geographic boundaries of the Avonworth School District which is north of Pittsburgh in Allegheny County. The ABC runs two leagues: The Minor League for youngsters aged 8 to 10; and the Little League for youngsters aged 11 to 13.[2] The ABC also sponsors Pony and Colt league teams for youngsters aged 14 through 17 which participate in the leagues of the North Boroughs Baseball Association. Approximately 220 boys participate in the various ABC programs. The Baseball Conference (ABC) is run by volunteers who coach and manage the boys teams. It has no money except what it raises in the community and the program is carried on each summer under the assumption that it is good for the community and the children. The volunteers do all of the work, solicit contributions and carry on a bake sale.

 We note at the outset that it is agreed that Pamela has been denied the privilege of playing baseball in the conference because she is a girl and for no other reason. Sections 1983 and 1985 and the equal protection clause of the 14th Amendment, however, do not provide protection against all discrimination; only against discrimination which occurs under color of state law. The unlawful discrimination must result from the "(m)isuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with

the authority of state law." Henig v. Odorioso, 385 F.2d 491, 494 (3rd Cir. 1967) quoting from United States v. Classic, 313 U.S. 299, 326, 61 S.Ct. 1031, 85 L.Ed. 1368 (1941). "Civil rights, such as are guaranteed by the Constitution against state aggression, cannot be impaired by the wrongful acts of individuals, unsupported by state authority in the shape of laws, customs, or judicial or executive proceedings." Civil Rights Cases, 109 U.S. 3, 3 S.Ct. 18, 27 L.Ed. 835 (1883). The 14th Amendment is directed only to state action and the invasion of the constitutional rights of one private individual by the actions of another private individual or private association is not within its purview. Williams v. Yellow Cab Co. of Pittsburgh, Pa., 200 F.2d 302 (3rd Cir. 1952); Civil Rights Cases, *supra*.

No clear rule exists to determine when there has been sufficient state involvement in private discrimination to meet the requirements of § 1983 and § 1985 of the Civil Rights Act. "Only by shifting facts and weighing circumstances can the nonobvious involvement of the State in private conduct be attributed its true significance." Burton v. Wilmington Parking Authority, 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961).

 The discrimination involved here, was practiced by a private organization. We think that a shifting and weighing of the facts here compels the conclusion that the discrimination in no way arose under color of state law.

There are only four instances here which could be considered to constitute state action:

1. The state granted a charter to the Avonworth Baseball Conference.[3]

---

2. Pamela Magill's age would make her eligible to play in the Minor League. Unlike the teams in the leagues for older children, the Minor League teams hold no tryouts. Youngsters do not have to "make the team" and all who sign up are assured of playing a specified minimum number of innings during the course of the season.

The ABC does not sponsor any girls baseball or softball leagues, but has volunteered to do so if there is sufficient interest. There

are, however, girls' softball teams in the area. Pamela participates two or three times a week in the North Hills Baseball Clinic where she plays with and against boys. It is apparent that Pamela is not deprived of the opportunity to play baseball. She has an opportunity to play both informal "sandlot" and more organized games.

3. The purpose of the ABC, as stated in its charter, is to " . . . foster, promote,

2. ACORD, which operates and maintains the Avonworth Community Park, this year waived a $25.00 fee which the ABC had previously been required to pay for permission to use a baseball field in the park.

3. The Borough of Ben Avon Heights permits the ABC to use a community baseball field free of charge.

4. The Avonworth School Board permits the ABC to use two baseball fields, and permitted the ABC to use the school facilities to announce and hold its annual organizational meeting.[4]

None of the baseball fields are used exclusively by the ABC.

■ Where, as here, the source of the alleged discrimination is a private organization the state must be "significantly involved" with invidious discrimination in order for the discriminatory action to fall within the ambit of the constitutional prohibition. Moose Lodge No. 107 v. Irvis, 407 U.S. 163, 92 S.Ct. 1965, 32 L.Ed.2d 627 (1972); Reitman v. Mulkey, 387 U.S. 369, 87 S.Ct. 1627, 18 L.Ed.2d 830 (1967). In discussing significant involvement the Court in Evans v. Newton, 382 U.S. 296, 86 S.Ct. 486, 15 L.Ed.2d 373 (1966),[5] mentioned state "supervision, control, or management" of a private facility, and in *Irvis* the Court mentioned what it described as the "symbiotic relationship" between the private and public activities in *Burton*.[6] We do not think the activities

involved here rise to the level of maintaining "supervision, control or management" over the ABC, and the State-ABC relationship certainly in no way amounts to symbiosis.

■ It is true that the ABC has been chartered by the state. Merely acting under a state license, however, is not state action within the context of the Civil Rights Act. Moose Lodge No. 107 v. Irvis, *supra*; Henig v. Odorioso, *supra*; Weyandt v. Mason's Stores, Inc., 279 F.Supp. 283 (W.D.Pa.1968). We think this is especially true where the charter is neutral and non-discriminatory on its face.

The remaining state involvement is both so minimal and so wholly unrelated to the activities which gave rise to the alleged discrimination that we think it would be unrealistic to classify it as state action for purposes of the Civil Rights Act. There is no evidence that ACORD, the Avonworth School Board, the Avonworth Municipal Authority or Ben Avon Heights Borough in any way promoted, participated in, or encouraged the discrimination. They merely permitted the ABC to use on occasion the public facilities under their control. There is no evidence that any of the defendant organizations and bodies (except, of course, ABC) maintain a policy of sex discrimination and limit or restrict the use of their facilities on that basis. This is a situation wholly differ-

---

sponsor, and encourage the playing and enjoyment of baseball among school age youngsters in the Avonworth School Area. . . ."

4. The ABC considered one of the fields to be in an unsafe condition and expended considerable time and expense in preparing it for use in the 1973 season.

5. In *Evans*, the city of Macon, Georgia, as trustee of land devised to the city for use as a park, "swept, manicured, watered, patrolled, and maintained" the park as a public facility for whites only, as well as granted a tax exemption.

6. In *Burton*, the Eagle Coffee Shoppe, Inc., which had rented space within a public parking building erected, owned and maintained by the Wilmington (Delaware) Parking Au-

thority, racially discriminated against one Burton and refused to serve him. The Court found that "the commercially leased areas were not surplus state property, but constituted a physically and financially integral and, indeed, indispensable part of the State's plan to operate its project as a self-sustaining unit." After reciting the areas of mutual dependence between Eagle and the State, the Court found that "profits earned by discrimination not only contribute to, but also are indispensable elements in, the financial success of a governmental agency." The Court concluded that State action was present because the State had "so far insinuated itself into a position of interdependence with Eagle that it must be recognized as a joint participant in the challenged activity . . . ."

ent from the facts of *Burton* and *Evans*. There the state agencies were actively engaged in establishing or maintaining facilities operated in a discriminatory manner.

Accordingly, we find that there is no state action involved, that an essential element of an action brought under §§ 1983 and 1985 is therefore absent and the complaint must be dismissed.

Assuming that state action exists, however, we still decline to issue the injunctions. We do not believe the action of the conference unreasonable or discriminatory in light of the circumstances. In other words, the classification was rational.

The directors of the baseball conference assign two reasons for their action. First, that they believe that young girls would be endangered physically if allowed to compete with the boys in organized baseball and second, that to permit the girls to compete would destroy the program already underway because the boys would drop out.

The directors, male and female, were unanimous in their opinions that baseball is a contact sport at times and at times the contact is violent. We can take judicial notice of that fact and find that baseball is a contact sport. There is no question that a runner who tries to beat a throw to the plate is frequently blocked by a catcher. The contact is severe if not violent. The directors spoke of their concern with wild pitchers and, of course, we know the consequences of trying to steal second or third. The directors have had a great deal of experience with boy's baseball and have formed the opinion after mature consideration that girls would not fare well in

physical contact with the boys. They admit that there are excellent girl athletes but contend that they should not be placed in physical contact with boys. This is a class action intended to force integration of the sexes generally in the baseball program and the directors believe this unwise.

In Bucha, et al. v. Illinois High School Association, et al., 351 F.Supp. 69 (N.D. Ill.1972) the court held the rule to be rational which prohibited girls competing with boys in interscholastic swimming. The court there took judicial notice of the records of men and women athletes at the Olympic games as evidence that men's record times are consistently better than women's and thus that men are generally faster and stronger in athletic competition than women. Citing Reed v. Reed, 404 U.S. 71, 92 S.Ct. 251, 30 L. Ed.2d 225 (1971) the Court held that the relevant inquiry, respecting equal protection of the law, was whether the challenged classification was rational. For purposes of the sport of swimming a classification based upon sex was found to be rational.

In Brenden, et al. v. Independent School District, 342 F.Supp. 1224 (D. Minn., 4th Div. 1972) aff'd, 477 F.2d 1292 (8th Cir. 1973), a contrary result was reached with respect to tennis, cross country running and cross country skiing although the court was careful to limit its holding to two young women athletes who had proven to be excellent athletes in a school district where no sports for girls existed.[7] No class action was involved. The Circuit reserved decision on contact sports quite carefully. Girls were admitted to a boy's golf team in Reed, et al. v. The Nebraska School Activities Association, 341 F.Supp. 258 (D.Neb.1972) but there was no other op-

---

7. In the reported cases the presence or absence of girls athletic programs is a factor which has been accorded great weight (see Brenden v. Independent School Dist., *supra*). The Avonworth Baseball Conference has no program for girls but its expression in open court that it would be willing to discuss pro-

viding such a program in the ensuing year fell on deaf ears. The plaintiff was candid in saying that there was no possibility of a settlement on the basis that a program would be provided for girls, that nothing short of the admission of girls to the program would suffice.

portunity for girls to play golf. In Haas v. South Bend Community School Corp., et al., 289 N.E.2d 495 (Supreme Court of Indiana, 1972) a girl was permitted to play golf on a boy's golf team but again a distinction was recognized for contact sports. There the plaintiffs conceded that a male-female classification is reasonable if it applies to sports involving physical contact between the contestants and the court specifically recognized the distinction.

Finally, the Sixth Circuit has recognized a distinction for contact sports. In Morris v. Michigan State Board of Education, 472 F.2d 1207 (1973) the trial court had issued an injunction invalidating Rule 5 of the Michigan High School Athletic Association which prohibited girls engaging in interscholastic athletic contests when the teams were composed of boys. The Circuit directed that the injunction be amended to specifically eliminate from its language teams engaged in contact sports.

Thus, it seems to us, the distinction for contact sports has been widely recognized.

We are aware of the holding of the Supreme Court in Frontiero et vir. v. Richardson, Sec. of Defense, 411 U.S. 677, 93 S.Ct. 1765, 36 L.Ed.2d 583, decided May 14, 1973, that sex is a suspect classification but that case involved the economic benefits to which a female army officer was entitled compared with those of a male army officer and we do not believe it controlling here.

Accordingly, we hold that sex is a rational distinction where a contact sport is involved. The complaint is therefore dismissed for this reason as well.

We do not believe it necessary to discuss the second reason assigned by the directors of ABC for refusing to allow girls to play on the boys' teams.

This opinion shall be deemed to comply with Rule 52. It is accordingly ordered that the complaint be dismissed.