BALTIC INDEPENDENT SCHOOL DISTRICT NO. 115 OF MINNEHAHA COUNTY, SOUTH DAKOTA, a school corporation, on behalf of itself and all others similarly situated, and Larry Underberg, a minor, by his next friend, Gerald Underberg, on behalf of himself and all others similarly situated, Plaintiffs,

v.

SOUTH DAKOTA HIGH SCHOOL ACTIVITIES ASSOCIATION, an unincorporated association, et al., Defendants.
Civ. 73-4027.

United States District Court,
D. South Dakota, S. D.
Aug. 20, 1973.

to which the plaintiff would have adequate opportunity to respond.

John N. Gridley, III, Sioux Falls, S. D., for plaintiffs.

Richard D. Hagerty, Doyle, Bierle & Hagerty, Yankton, S. D., for defendants.

## MEMORANDUM DECISION AND ORDER

NICHOL, Chief Judge.

This is a class action authorized by Rule 23 of the Federal Rules of Civil Procedure. The plaintiffs seek permanent injunctive relief based upon an alleged violation of their constitutional rights under the fourteenth amendment and 42 U.S.C. Secs. 1981 and 1983. The Court grants such relief based upon the following findings of fact and conclusions of law.

Each year, two qualifying high school speech tournaments are conducted in the state of South Dakota to determine entrance into the national tournament of the National Forensic League (NFL). One of these elimination tournaments is conducted directly by the NFL among all its member schools in the state. A second independent tournament is conducted by the South Dakota High School Activities Association (SDHSAA) which divides member schools into two classes, "A" and "B", according to enrollment size. In order to ascertain the qualify-ing school in this second tournament, the National Forensic League sends out a certifying form to the SDHSAA wherein it solicits the names of "the winners of Class A or equivalent highest ranking classification." The defendant organization has certified to the NFL only the winners of the class "A" state competition.

Since a team from South Dakota could qualify for the national tournament by winning either the NFL District Tournament or the state class "A" speech tournament, "A" schools have two opportunities to reach the national level, whereas "B" schools have only one. Specifically, although the Baltic High School debate team won the "B" championship in 1973, they had no opportunity to participate in the NFL national tournament because they did not win the 1973 NFL District Tournament championship. On the other hand, when "A" classified Washington High School won the 1973 state "A" speech tournament, it automatically became certified to participate in the NFL national tournament, even though they, also, had not won the 1973 NFL District Tournament championship.

The basic allegations of plaintiffs' complaint are: that by the rules, regulations, practice, usage, and custom of the State of South Dakota, and under color of the laws of said state, acting by and through defendants and its agents, plaintiffs and all other school districts and students similarly situated in the State of South Dakota are being denied the equal protection of the laws and their right to free speech and expression in that they are being denied the opportunity to participate in a qualifying tournament for the national speech tournament with students of similar qualifications, experience, and ability. The plaintiffs seek to enjoin the defendants from enforcing those Association rules which would exclude or in any manner whatsoever bar schools or students from qualifying speech tournaments to the national speech tournament on the basis of student body size. Plaintiffs further re-

quest that defendants be enjoined from certifying participation in the national tournament on the basis of student body size. The complaint also requests that said rules be declared void and unconstitutional as violative of the fourteenth amendment in that the rules constitute an unlawful discrimination based on school enrollment and that the rules violate the plaintiffs' constitutional rights guaranteed under the equal protection clause of the fourteenth amendment, in violation of 42 U.S.C. § 1983. The complaint also requests that plaintiffs be awarded a reasonable sum for attorney's fees.

## I. JURISDICTION

The court has jurisdiction over this action by reason of 42 U.S.C. Secs. 1981 and 1983 and 28 U.S.C. Sec. 1343. Under 42 U.S.C. Sec. 1983, any person who suffers the deprivation of civil rights guaranteed to him by the Constitution, by persons acting under color of state law may bring suit for the redress of those deprivations. Baltic Independent School District is a proper party to this suit. SDCL 13–5–1. Parkview Heights Corp. v. City of Black Jack, 467 F.2d 1208, 1213 (8th Cir. 1972); Brewer v. Hoxie School District No. 46, 238 F.2d 91, 104 (8th Cir. 1956). Larry Underberg is a proper party. SDCL 15–6–17(c); Rule 17(c), Federal Rules of Civil Procedure.

The SDHSAA and its members are persons within the meaning of 42 U.S.C. Sec. 1983 and it is clear to this court that defendants are acting under color of state law. Brenden v. Independent School District 742, 477 F.2d 1292, 1295 (8th Cir. 1973). Using the same reasoning as in Brenden, although the SDHSAA is a voluntary organization, the original allowance for public high schools to join such an association is authorized by state statute. SDCL 13–36–4. In addition, the administration and rule-making of the Association is by a Board of Control made up of

representatives from member school districts (SDHSAA Constitution, Art. V, section 1, Art. VI, sections 4 and 5), and the member schools and their officials are responsible for enforcing said rules. SDHSAA Constitution, Art. VII; Brenden, supra, at 1295. "The Association is sufficiently entwined with the public schools to cause its actions to be under color of state law," and the court thereby does have jurisdiction under 42 U.S.C. Sec. 1983. Reed v. Nebraska School Activities Association, 341 F.Supp. 258 (D.C.Neb.1972).

There is also no need under 42 U.S.C. Sec. 1983 for plaintiffs to exhaust administrative remedies before commencing legal action as the procedures for attacking state action under that provision is a remedy separate from and in addition to any state remedies.[1]

## II. EQUAL PROTECTION

The court holds that the rule of the SDHSAA which requires that schools be divided for speech activities into classes based solely on enrollment is in its application unreasonable "in light of the objectives which the rule seeks to promote." Brenden, supra, 477 F.2d at 1294. The plaintiffs in Brenden were two high school girls who were prohibited by a Minnesota State High School League rule from participating with males in high school interscholastic activities, namely tennis and skiing. Where it was shown that the girls could compete effectively on those teams, and where there were no alternative competitive programs within the schools which could have provided an equal opportunity for competition for these girls, the court there held that the rule in its application was arbitrary and unreasonable in light of the objectives it sought to promote, and was in violation of the equal protection clause of the fourteenth amendment.

The parallels between Brenden and this case are cogent. Indeed, the objec-

1. Wilwording v. Swenson, 404 U.S. 249, 251, 92 S.Ct. 407, 30 L.Ed.2d 418 (1971); Brenden v. Independent School District, 342 F.Supp. 1224, 1230 (D.C.Minn.1972) (aff'd 477 F.2d 1292 (8th Cir. 1973).

tive of the sex-based classification in *Brenden* was, as stated by those defendants, to achieve equitable competition among classes. *Brenden, supra,* 342 F. Supp. 1224, 1233 (D.C.Minn.1972). Defendants in their brief also argue that an enrollment-based classification has as its objective the achievement of fairer competition among classes by enabling smaller schools to compete against schools of equal ability. Fairer competition is *not* achieved, however, when the smaller schools have only one opportunity to qualify for the NFL national speech tournament and the larger schools have two such opportunities. Thus, the rule, in its application, by denying the "B" schools an avenue to national competition, becomes arbitrary and unreasonable, and a violation of the Equal Protection Clause.

Defendants contend that it is not they, but rather the National Forensic League, who are denying plaintiffs an opportunity for entry into the national tournament, since: (1) the national tournament rules as set forth in the NFL Chapter Manual state, "if a state league awards equal highest honors to two or more teams or contestants, none of them qualify for national entry"; and (2) the NFL form sent out for certification provides, "if teams or contestants were divided into classes, I have certified only the winners of Class A or *equivalent highest ranking* classification." (emphasis added). The court cannot agree with defendants' contention. While it is true that the NFL rules provide that only *one* champion from the state-run tournament can enter national competition, it is the SDHSAA rule which prevents plaintiffs from ever being that champion. It is the SDHSAA which determines that "highest ranking" means larger enrollment.

## (A) *REASONABLE CLASSIFICATION TEST*

■ The equal protection test to be applied in this case is that for non-suspect classifications. As stated in the recent case of Reed v. Reed, 404 U.S. 71, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971):

A classification must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike. Royster Guano Co. v. Virginia, 253 U.S. 412, 415, 40 S.Ct. 560, 561, 64 L.Ed. 989 (1920).

The issue in *Reed* was whether a preference for males over females among competing applicants for letters of administration bore a rational relationship to the state objective of eliminating an area of controversy when two or more persons were equally entitled to letters of administration. The Supreme Court held that such preference did not advance the objective in a manner consistent with the command of the Equal Protection Clause. *Reed, supra,* at 76, 92 S.Ct. 251.

■ The issue here is whether a rule classifying schools by enrollment bears a rational relationship to the SDHSAA objective of providing for and promoting fairer competition. The answer is it does not, *when* such classification results, by its application, in a denial of equal protection by allowing larger schools a greater opportunity than smaller schools to compete in the national speech tournament, regardless of the similar qualifications as to age, experience, and ability of the debate students involved.

Further evidence that fairer competition would not result from the SDHSAA rule was brought out at trial by uncontroverted testimony that scholarship recommendations by college officials for debate students are based on the student debate record, including participation in the national tournament. The disadvantage to "B" school students resulting from possible loss of financial aid could certainly be substantial and enhances the unreasonableness of the SDHSAA rule.

The court at this time makes no judgment as to whether a classification based on enrollment is unconstitutional on its face or in all its applications.

"The rationality demanded by the Equal Protection clause is not to be found in legal distinction, or labels, but must derive from the facts." Martarella v. Kelley, 349 F.Supp. 575, 595 (D.C.N.Y.1972). The facts in this case are clear and simple. "A" schools have two opportunities to enter national speech competition; "B" schools have only one. In order to comply with equal protection requirements, there must be equality of opportunity among people with similar qualifications. Whether this is accomplished by an elimination contest between the "A" and "B" champions, or whether some other method is utilized does not concern the court. What is of concern to the court is that Baltic High School students, along with other "B" school students, have the same opportunity to compete, to win, and to earn college scholarships as "A" school students.

### (B) *RIGHT VS. PRIVILEGE*

 Defendants raise the issue that participation in extra-curricular activities is outside the protection of due process and thus is not a constitutionally protected right, citing Mitchell v. Louisiana High School Athletic Association, 430 F.2d 1155, 1158 (5th Cir. 1970) and Paschal v. Perdue, 320 F.Supp. 1274, 1276 (D.C.Fla.1970), cases which involved students attempting to get waivers of athletic eligibility requirements. First of all, the decision in this case is made on equal protection grounds, not on grounds of denial of due process. Second, the issue of "right" versus "privilege" was discarded by the Supreme Court in the welfare entitlement case of Graham v. Richardson, 403 U.S. 365, 91 S.Ct. 1848, 29 L.Ed.2d 534 (1971), which stated, "this Court now has rejected the concept that constitutional rights turn upon whether a governmental benefit is characterized as a 'right' or as a 'privilege'." *Graham, supra*, at 374, 91 S.Ct. at 1853.[2] As stated by the Court of Appeals in *Brenden, supra*, 477 F.2d at 1297,

The question in this case is not whether the plaintiffs have an absolute right to participate in interscholastic athletics, but whether the plaintiffs can be denied the benefits of activities provided by the state for male students. See, Reed v. The Nebraska School Activities Association, 341 F. Supp. 258, 262 (D.Neb.1972).

The basic inquiry remains unchanged in this case. The issue is not whether students from Baltic and the other "B" schools have an absolute right to participate in national debate tournaments, but whether those plaintiffs can be denied the benefits of those opportunities provided by the state for class "A" schools.

In summary, this court holds that the South Dakota High School Activities Association rule which classifies schools for speech activities according to enrollment is unconstitutional as a denial of the equal protection of the laws of the United States, when by its application, said rule denies to plaintiffs and other "B" schools an opportunity for entrance into national debate competition which is provided for the "A" schools. To implement this decision, the court orders that defendants, their agents and employees, be permanently enjoined and restrained from

(1) excluding, or in any manner whatsoever barring from qualifying tournaments to the national tournament schools or students on the basis of student body size; and

(2) certifying, approving, clearing or arranging participation by schools or students in the national tournament on the basis of student body size.

While plaintiffs argue that defendants have imposed a prior restraint of free speech, the court does not see the relevance of this theory, and discussion is not necessary as a decision has been made on other grounds.

2. See also Shapiro v. Thompson, 394 U.S. 618, 627 n. 6, 89 S.Ct. 1322, 22 L.Ed. 2d 600 (1969) ; Goldberg v. Kelly, 397 U.S. 254, 262, 90 S.Ct. 1011, 25 L.Ed. 2d 287 (1970) ; Bell v. Burson, 402 U.S. 535, 539, 91 S.Ct. 1586, 29 L.Ed. 90 (1971).

Attorney's fees are denied on the basis of SDCL 15–17–6 and Peter Kiewit Sons' Co. v. Summit Construction Co., 422 F.2d 242, 274 (8th Cir. 1969). The recent United States Supreme Court decision of Hall v. Cole, 41 LW 4658, 93 S.Ct. 1943, 35 L.Ed.2d 702 (1973), cited by plaintiffs in support of their motion to reinstate attorney's fees, is inapplicable in this case. The theory in *Hall* is that when successful litigation confers a substantial benefit on members of an ascertainable class, all of the class benefitting should pay, not just that party bringing suit. Thus, in *Hall*, the union member bringing suit against the union was awarded fees on the assumption his success benefitted all union members. Here, the defendant SDHSAA is not composed solely of members of the class benefitting from the litigation, that is, "B" schools; and thus, to allow attorney's fees would not shift the cost of litigation to the class which benefitted from it.

The foregoing constitute this Court's findings of fact and conclusions of law in accordance with Rule 52, Federal Rules of Civil Procedure.